# EXHIBIT A

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

IN RE:

CONCRETE AND CEMENT ADDITIVES
ANTITRUST LITIGATION

This Document Relates to:
    DIRECT PURCHASER ACTIONS

Case No. 1:24-md-3097-LJL

### SETTLEMENT AGREEMENT

THIS SETTLEMENT AGREEMENT ("Agreement," "Settlement Agreement," or "Settlement") is made and entered into as of August 10, 2025, by and between Plaintiffs M&D Peterson, LLC, Keystone Concrete Block & Supply Co. Inc., 570 Concrete, LLC, H&S Redi-Mix, Inc., J&L Imperium Industries, LLC, and Benevento Concrete Corp. (together, "Plaintiffs"), on behalf of themselves and on behalf of each Settlement Class Member (the "Settlement Class" as defined below), and Compagnie de Saint-Gobain, S.A., Saint-Gobain Corporation, Chryso S.A.S., Chryso, Inc., and GCP Applied Technologies, Inc. (together "Saint-Gobain") (Saint-Gobain collectively with Plaintiffs and the Settlement Class, referred to herein as the "Parties").

WHEREAS, Plaintiffs are prosecuting claims against Saint-Gobain and other defendants on their own behalf and on behalf of the Settlement Class in *In re Concrete and Cement Additives Antitrust Litig.*, Case No. 24-MD-3097(LJL) (the "Action");

WHEREAS, the Action makes allegations regarding Saint-Gobain's involvement in alleged anticompetitive conduct relating to the sale of CCAs;

WHEREAS, on or around October 17, 2023, Plaintiffs became aware of antitrust investigations into the CCA industry carried out by the European Commission ("EC"), the United Kingdom's Competition and Markets Authority ("CMA"), and the Turkish Competition Authority

("TCA") concerning suspected infringement by Saint-Gobain and other defendants of antitrust laws;

WHEREAS, on May 29, 2024, the Antitrust Division of the United States Department of Justice disclosed that it has similarly initiated a grand jury investigation into the concrete and cement additives industry;

WHEREAS, Plaintiffs allege that Defendants facilitated the alleged unlawful contract, combination, or conspiracy through, *inter alia*, their shared membership in trade associations globally, and by consolidating their control of the CCA market through the acquisition of competitors, causing Plaintiffs to pay higher prices for CCAs. Plaintiffs allege that Defendants' unlawful contract, combination, or conspiracy concerns price increases and the imposition of surcharges on CCAs beginning no later than January 1, 2017 through preliminary approval of the Agreement, violating Sections 1 and 3 of the Sherman Act (15 U.S.C. §§ 1, 3);

WHEREAS, Plaintiffs, on behalf of themselves and as representatives of the Settlement Class, allege that price competition for CCAs was restrained or eliminated and they were injured as a result of Saint-Gobain's alleged participation in Defendants' unlawful contract, combination, or conspiracy to fix, raise, maintain, or stabilize the price levels of, and to exchange information about, CCAs in violation of Section 1 and Section 3 of the Sherman Act (15 U.S.C. §§ 1, 3);

WHEREAS, Plaintiffs have contended that they and the Settlement Class are entitled to actual damages, treble damages, and injunctive relief for loss or damage, and threatened loss or damage, as a result of violations of the laws as alleged in the Action, arising from Saint-Gobain's alleged conduct;

WHEREAS, Saint-Gobain denies Plaintiffs' allegations, and asserts that it has a number of valid defenses to Plaintiffs' claims;

2

WHEREAS, Defendants filed motions to dismiss Plaintiffs' complaints, and on June 25, 2025, the Court granted Defendants' motions to dismiss without prejudice and gave Plaintiffs 30 days to file amended consolidated complaints, then subsequently extended that deadline to September 26, 2025;

WHEREAS, counsel for the Parties have engaged in arm's-length negotiations, on the terms of this Agreement, and this Agreement together with the Confidential Supplement embodies all of the terms and conditions of the Settlement;

WHEREAS, Plaintiffs, through their counsel, conducted an investigation into the facts and law regarding the Action, and have concluded that resolving the claims against Saint-Gobain, according to the terms set forth below, is in the best interests of Plaintiffs and the Settlement Class because of the payment of the Settlement Amount (defined below) and the value of the non-monetary compensation that Saint-Gobain has agreed to provide pursuant to this Agreement;

WHEREAS, Saint-Gobain, despite its denial of the allegations by Plaintiffs and its belief that it has good defenses thereto, has nevertheless agreed to enter into this Agreement to avoid further expense, inconvenience, and the distraction of burdensome and protracted litigation, to obtain the release, order, and judgment contemplated by this Agreement, and to put to rest with finality all claims that have been or could have been asserted against Saint-Gobain with respect to the sale of CCAs including without limitation, claims based in whole or in part on the facts, occurrences, transactions, or other matters alleged in the Action, or otherwise the subject of the Action, or that could have been alleged in the Action or otherwise have been the subject of the Action, as more particularly set out below;

WHEREAS, the Parties wish to preserve all arguments, defenses, and responses to all claims in the Action, including any arguments, defenses, and responses to any proposed litigation

class proposed by Plaintiffs in the event this Agreement does not obtain Final Approval (defined below);

WHEREAS, the Parties have had a full opportunity to examine the facts and circumstances surrounding their respective decisions to accept the terms of this Agreement and have not relied on any representations (or the lack thereof) made by any other Party concerning the facts and circumstances leading to this Agreement;

NOW THEREFORE, in consideration of the foregoing, the terms and conditions set forth below, and other good and valuable consideration, it is agreed by and among the Parties that the claims of Plaintiffs and the Settlement Class be settled, compromised, and dismissed on the merits with prejudice as to Saint-Gobain, subject to Court approval, on the following terms and conditions:

1.    **GENERAL DEFINITIONS**.

The terms below and elsewhere in this Agreement with initial capital letters shall have the meanings ascribed to them for purposes of this Agreement.

   a.    "Amended Complaint" means the amended pleading that Plaintiffs have been permitted by the Court to file by September 26, 2025.

   b.    "Authorized Claimant" means any Settlement Class Member who is entitled to a distribution from the Settlement Fund pursuant to the Plan of Allocation approved by the Court in accordance with the terms of this Agreement.

   c.    "CCAs" means (a) concrete admixtures, (b) cement additives, (c) admixtures for mortar, and (d) products containing or bundled with any of the foregoing.

   d.    "Class Notice" means the notice to any Settlement Class Members approved by the Court.

e. "Class Representatives" mean Plaintiffs M&D Peterson, LLC, Keystone Concrete Block & Supply Co. Inc., 570 Concrete, LLC, H&S Redi-Mix, Inc., J&L Imperium Industries, LLC, and Benevento Concrete Corp.

f. "Complaint" refers to the Direct Purchaser Plaintiffs' Corrected Consolidated Amended Complaint filed on September 20, 2024 (ECF No. 157).

g. "Confidential Supplement" means the agreement containing certain Confidential terms allowing rescission of the Agreement under certain circumstances that will be submitted *in camera* to the Court if requested by the Court.

h. "Court" means the United States District Court for the Southern District of New York and the Honorable Lewis J. Liman.

i. "Defendants" means those Defendants named in the Complaint or Amended Complaint.

j. "Effective Date" means the date when the Court has granted final approval of the Agreement and the time for all appeals has passed, as set forth in Paragraph 2 of this Agreement.

k. "Escrow Agent" means the entity selected by Settlement Class Counsel, subject to Court approval, to hold the Settlement Funds in escrow.

l. "Execution Date" means the latest date of the execution of this Agreement by all Parties.

m. "Non-Monetary Consideration" means the continuing discovery obligations defined in Paragraph 14.

n. "Notice Plan" means the Court-approved plan to provide Settlement Class Members with Class Notice.

o.      "Opt-Out" means only persons and entities who file a timely and valid written request for exclusion from the Settlement in accordance with the exact procedures set forth in the Court-approved Class Notice.

p.      "Opt-Out Deadline" means the Court-ordered date set forth in the Class Notice by which all persons and entities seeking exclusion must submit a written request for exclusion.

q.      "Opt-Out Threshold" means the mutually agreed Opt-Out Member Percentage and/or Opt-Out Revenue Percentage described in the Confidential Supplement.

r.      "Plan of Allocation" means the plan of allocation of the Settlement Fund whereby the Settlement Fund shall be distributed to Authorized Claimants after payment of costs associated with effectuating the Court-approved Notice Plan, Taxes, fee and expense award(s), and Service Awards.

s.      "Preliminary Approval" means the date on which the Court grants preliminary approval of this Settlement;

t.      "Released Claims" shall have the meaning set forth in Paragraph 4 of this Agreement.

u.      "Releasees" means Compagnie de Saint-Gobain, S.A., Saint-Gobain Corporation, Chryso S.A.S., Chryso, Inc., and GCP Applied Technologies, Inc. and each of their respective direct and indirect parent companies, subsidiary companies, affiliated entities, affiliated partnerships, and joint venturers, including all of their respective predecessors, successors and assigns, and each and all of their present, former, and future principals, partners, officers, directors, supervisors, employees, agents, stockholders, members, representatives, insurers, attorneys, heirs, executors,

administrators, beneficiaries, and representatives of any kind, but does not include any other Defendant in the Action.

v.    "Releasors" means Plaintiffs, the Settlement Class, including each and every Settlement Class member and their past, present, and future, direct and indirect, parent companies, subsidiary companies, affiliated companies, affiliated partnerships, divisions, and joint venturers, including all of their respective predecessors, successors and assigns, and each and all of their present, former, and future principals, partners, officers, directors, supervisors, employees, agents, stockholders, members, representatives, insurers, attorneys, servants, accountants, assigns, beneficiaries, estates, successors in interest, personal representatives, executors, and representatives of any kind, and all other persons, partnerships, or corporations with whom any of the foregoing have been, or now will be, affiliated, and the predecessors, successors, heirs, executors, and assigns of any of the foregoing, as well as any party claiming by, for, or through the Settlement Class members.

w.    "Service Award" means any Court-approved monetary award for Class Representatives paid from the Settlement Amount, as further described in Paragraph 13.

x.    "Settlement Administrator" means the firm retained to disseminate notice to the Settlement Class (defined below in Paragraph 3) and administer the distribution of the Settlement Fund (defined below) to the Settlement Class, including all matters related thereto ("Settlement Administration"), subject to Court approval.

y.    "Settlement Amount" shall be $1,500,000 U.S. dollars as specified in Paragraph 7.

z.      "Settlement Class" means the class defined in Paragraph 3 below.

aa.     "Settlement Class Counsel" shall refer to Hausfeld LLP.

bb.     "Settlement Class Member" means each member of the Settlement Class who has not validly elected to be excluded from the Settlement Class.

cc.     "Settlement Class Period" means from January 1, 2017 to Preliminary Approval.

dd.     "Settlement Fund" means the Settlement Amount plus accrued interest on said amount.

ee.     "Taxes" means any and all federal, state, and local income taxes, excise taxes, estimated taxes, gross receipt taxes, or any other taxes, as well as interest, penalties, tax detriments, and any other additions to taxes.

2.      **APPROVAL OF THIS AGREEMENT AND DISMISSAL OF CLAIMS AGAINST SAINT-GOBAIN.**

a.      Saint-Gobain shall use its reasonable best efforts in connection with Settlement Class Counsel's motions for approval of the Settlement and any related documents necessary to effectuate and implement the terms and conditions of the Agreement. Subject to the approval of the Court, the Parties will undertake their reasonable best efforts, including all steps and efforts consistent with the Agreement that may be reasonably necessary or appropriate, by order of the Court or otherwise, to carry out the terms of the Agreement.

b.      Settlement Class Counsel shall file a motion for preliminary approval of this Agreement within twenty-one (21) days of the Execution Date. Saint-Gobain shall have a reasonable opportunity to review and comment on Settlement Class Counsel's memorandum in support of their motion for preliminary approval and Settlement Class Counsel shall reasonably consider Saint-Gobain's comments.

8

c.      Plaintiffs, at a time to be decided in their sole discretion or as otherwise ordered by the Court, shall submit to the Court a motion for authorization to disseminate notice of the Settlement and final judgment contemplated by this Agreement to the Settlement Class (the "Notice Motion"). The Notice Motion shall include a proposed form of, method for, and proposed dates of dissemination of Class Notice. Before submission, Saint-Gobain shall have a reasonable opportunity to review and comment on the Notice Motion, and Plaintiffs shall reasonably consider Saint-Gobain's comments.

d.      Saint-Gobain agrees that Plaintiffs may use up to $200,000 (two hundred thousand U.S. dollars) of the Settlement Amount to effectuate notice to putative members of the Settlement Class. The Parties will meet and confer in good faith regarding the need for payment of notice costs beyond this amount, if any, from the Settlement Amount.

e.      Saint-Gobain agrees that notice costs paid or incurred from the Settlement Amount, including the amounts set forth in Paragraph 2(d), *supra*, shall not be reimbursed to Saint-Gobain in the event any of the criteria of Paragraph 15(b) are satisfied.

f.      Plaintiffs shall seek the entry of an order and final judgment, the text of which Plaintiffs and Saint-Gobain shall agree upon, and such agreement will not be unreasonably withheld. The terms of that proposed order and final judgment will include, at a minimum, the substance of the following provisions:

     i.      certifying the Settlement Class described in Paragraph 3, pursuant to Rule 23 of the Federal Rules of Civil Procedure, solely for purposes of this Settlement as a Settlement Class for the Action;

ii. approving finally this Settlement and its terms as being a fair, reasonable, and adequate settlement as to the Settlement Class Members within the meaning of Rule 23 of the Federal Rules of Civil Procedure and directing its consummation according to its terms;

iii. directing that all Releasors shall, by operation of law, be deemed to have released all Releasees from the Released Claims (as defined in Paragraph 4) and claims to be waived and released pursuant to Paragraph 4;

iv. directing that the Action (including the Complaint and Amended Complaint) be dismissed as to Saint-Gobain with prejudice and, except as provided for in this Agreement, without costs;

v. except as to disputes agreed to be resolved through alternative dispute procedures, reserving exclusive jurisdiction over the Settlement and this Agreement, including the interpretation, administration, and consummation of this Settlement, as well as over Saint-Gobain for its provision of Non-Monetary Consideration pursuant to this Agreement, to the Court;

vi. determining under Federal Rule of Civil Procedure 54(b) that there is no just reason for delay and directing that the judgment of dismissal with prejudice in the Action as to Saint-Gobain shall be final; and providing that (a) the Court's certification of the Settlement Class is for settlement purposes only and without prejudice to, or waiver of, the rights of any Defendant, including Saint-Gobain, to contest certification of any other class proposed in the Action; (b) the Court's findings in this order and final judgment in the Action shall have no effect on the Court's ruling on any

motion to certify any class in the Action or on the Court's rulings concerning any Defendant's motion; and (c) no Party may cite or refer to the Court's approval of the Settlement Class as persuasive or binding authority with respect to any motion to certify any such class or any Defendant's motion.

g.    This Agreement shall become final and be deemed to have received "Final Approval" when (i) the Court has entered in the Action a final order certifying the Settlement Class described in Paragraph 3 and approving this Agreement under Federal Rule of Civil Procedure 23(e) and has entered a final judgment dismissing the Action with prejudice as to Saint-Gobain and without costs other than those provided for in this Agreement, and (ii) the time for appeal or to seek permission to appeal from the Court's approval of this Agreement and entry of the order and the final judgment as to Saint-Gobain described in (i) hereof has expired in the Action or, if appealed, approval of this Agreement and the order and final judgment in the Action as to Saint-Gobain have been affirmed in their entirety by the court of last resort to which such appeal has been taken and such affirmance has become no longer subject to further appeal or review. Nothing in this Paragraph 2, nor anything related to Settlement Class Counsel's request(s) for fees, costs, or expenses shall impact the finality of this Agreement, regardless of what the court may decide about Settlement Class Counsel's entitlement to attorneys' fees, costs, or expenses or any other aspect of this Paragraph 2. No order of a court or modification or reversal on appeal of any order of the court concerning any attorney's fees, costs, expenses, or Service Awards shall constitute grounds for

termination of this Agreement, provided that it does not otherwise affect the rights of the Releasees under this Agreement. It is agreed that the provisions of Rule 60 of the Federal Rules of Civil Procedure shall not be taken into account in determining the above-stated times. On the Execution Date, Plaintiffs and Saint-Gobain shall be bound by the terms of this Agreement, and this Agreement shall not be rescinded except in accordance with Paragraph 15.

3. **CERTIFICATION OF A SETTLEMENT CLASS**.

a.  Plaintiffs shall move the Court for certification of the following Settlement Class for settlement purposes only:

> All persons and entities in the United States and its territories who purchased CCAs directly from any of the Defendants or their subsidiaries, predecessors, affiliates, and/or agents during the period beginning no later than January 1, 2017, until Preliminary Approval of this Settlement Agreement.

b.  Excluded from the Settlement Class are Defendants, their parent companies, subsidiaries, affiliates, officers, directors, employees, assigns, successors, agents, and co-conspirators, and the Court and its staff.

c.  Saint-Gobain agrees that, for purposes of obtaining approval of this Settlement, it will not oppose Plaintiffs' motion(s) for certification of the Settlement Class for settlement purposes only. The Parties agree that, if the Court does not approve the Agreement, then each side shall be returned to their pre-Settlement positions. At such point, Saint-Gobain shall have the full ability to oppose any motion for certification of a litigation class, and Plaintiffs may not use anything in the Agreement, preliminary approval papers, or other settlement materials against Saint-Gobain.

12

4.    <u>**R**ELEASORS' **R**ELEASED **C**LAIMS</u>.

    a.    Upon the occurrence of the Effective Date and in consideration of the payment by Saint-Gobain of the Settlement Amount and the Non-Monetary Consideration to be provided pursuant to Paragraph 14 of this Agreement, the Releasors shall be deemed to completely, finally, and forever release, acquit, and discharge the Releasees from any and all claims, counterclaims, demands, actions, potential actions, suits, and causes of action, losses, obligations, damages, matters and issues of any kind or nature whatsoever, and liabilities of any nature, including without limitation claims for costs, expenses, penalties, and attorneys' fees, whether class, individual, or otherwise, that the Releasors, or any of them, ever had or now has directly, representatively, derivatively or in any other capacity against any of the Releasees, whether known or unknown, suspected or unsuspected, asserted or unasserted, foreseen or unforeseen, actual or contingent, accrued or unaccrued, matured or unmatured, disclosed or undisclosed, apparent or unapparent, liquidated or unliquidated, or claims that have been, could have been, or in the future might be asserted in law or equity, on account of or arising out of or resulting from or in any way related to any conduct regardless of where it occurred at any time prior to the Effective Date concerning the purchase of CCAs, including without limitation claims based in whole or in part on the facts, occurrences, transactions, or other matters alleged in the Action, or otherwise the subject of the Action, or that could have been alleged in the Action or otherwise have been the subject of the Action, which arise under any antitrust, unfair competition, unfair practices, price discrimination, unitary pricing, trade practice, consumer protection, unjust

enrichment, civil conspiracy law, fraud, RICO, or any other law, code, rule, or regulation of any country or jurisdiction worldwide, including under federal or state law, and regardless of the type or amount of damages claimed, from the beginning of time through the Effective Date (the "Released Claims").

b.   In addition to the provisions of Paragraph 4(a), the Releasors acknowledge they understand Section 1542 of the California Civil Code and expressly waive and release any and all provisions of and rights and benefits conferred by Section 1542 of the California Civil Code, or by any law of any state or territory of the United States or other jurisdiction, or principle of common law, which is similar, comparable, or equivalent to Section 1542 of the California Civil Code, with respect to the claims released herein. Section 1542 of the California Civil Code provides as follows:

**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.**

c.   The Parties intend that the releases in this Agreement be interpreted and enforced broadly and to the fullest extent permitted by law.

d.   The Releasors acknowledge that they may hereafter discover facts in addition to or different from those they believe to be true with respect to the subject matter of this Agreement. The Releasors agree that, notwithstanding the discovery of the existence of any such additional or different facts that, if known, would materially affect their decision to enter into this Agreement, and absent any fraud by Saint-Gobain that induced the Releasors to grant the releases herein, the releases herein

14

given shall be and remain in effect as a full, final, and complete general release of the Released Claims, and the Releasors shall not be entitled to modify or set aside this Agreement, either in whole or in part, by reason thereof.

e.    Exclusions to Releasors' Released Claims. Released Claims do not include (a) any claims for product liability, breach of warranty, breach of contract, or tort of any kind (other than a breach of contract, breach of warranty, or tort based on any factual predicate in this Action), (b) any claims arising out of violation of the Uniform Commercial Code, (c) any claims arising out of personal or bodily injury, (d) any claims not arising from the factual predicate of the Action, or (e) any claims arising under foreign law related to transactions outside the United States.

5.    **RELEASEES' RELEASED CLAIMS**. Upon the Effective Date, Releasees shall release Releasors and Settlement Class Counsel from any claims relating to the institution, prosecution, or settlement of the litigation resolved by this Agreement.

6.    **COVENANT NOT TO SUE**.

a.    The Releasors hereby covenant and agree that they shall not, hereafter, sue or otherwise seek to establish liability against Releasees based, in whole or in part, upon any of the Released Claims as set forth in Paragraph 4.

b.    The Releasees hereby covenant and agree that they shall not, hereafter, sue or otherwise seek to establish liability against Releasors based, in whole or in part, upon any of the Released Claims as set forth in Paragraph 5.

7.    **SETTLEMENT AMOUNT**

a.    Saint-Gobain agrees that an amount equal to $1,500,000 U.S. dollars, all in cash, will be paid on behalf of Saint-Gobain as the Settlement Amount in settlement of

the Action, inclusive of Settlement Class recovery amounts, fees (including attorneys' fees and any other fees), and costs, in full resolution of the claims made by Plaintiffs and the Settlement Class in the Action. The payment described in this Paragraph shall constitute the total amount to be paid by Saint-Gobain in settlement of these claims. Saint-Gobain shall have the Settlement Amount deposited into the Escrow Account within ten (10) business days after the Execution Date.

b.     Plaintiffs shall provide information for the Escrow Account prior to that time.

c.     The Settlement Amount will only be released for distribution upon Final Approval of the Agreement. The Parties agree and acknowledge that none of the Settlement Amount paid by Saint-Gobain under this Agreement shall be deemed to be, in any way, a penalty or a fine of any kind.

8.     **ESCROW ACCOUNT**.

a.     The Settlement Fund shall be established as an escrow account at a bank of Settlement Class Counsel's choosing, subject to approval by the Court (the "Escrow Account").

b.     The Escrow Account shall be administered by the Escrow Agent pursuant to this Agreement and subject to the Court's continuing supervision and control.

c.     No monies shall be paid from the Settlement Fund without the specific authorization of Settlement Class Counsel.

d.     All payments into the Escrow Account shall, at the direction of Settlement Class Counsel, be invested in instruments or accounts backed by the full faith and credit of the United States Government or fully insured by the United States Government or an agency thereof, including U.S. Treasury Bills, U.S. Treasury Money Market

Funds, or a bank account insured by the Federal Deposit Insurance Corporation ("FDIC") up to the guaranteed FDIC limit. Any interest earned on any of the foregoing shall become a part of the Settlement Fund. Saint-Gobain shall have no responsibility for, or liability in connection with, the Settlement Fund or Escrow Account, including, without limitation, the investment, administration, maintenance, or distribution thereof.

e.  The Settlement Fund held in the Escrow Account shall be deemed and considered to be in *custodia legis* of the Court and shall remain subject to the jurisdiction of the Court, until such time as the Settlement Fund shall be distributed pursuant to this Agreement or further order(s) of the Court.

f.  The Settlement Administrator, under the supervision of Settlement Class Counsel, shall be solely responsible for filing all informational and other tax returns necessary to report any net taxable income earned by the Escrow Account and shall file all informational and other tax returns necessary to report income earned by the Escrow Account and will work with the Escrow Agent, if applicable, and Settlement Class Counsel to take out of the Escrow Account, as and when legally required, any tax payments, including interest and penalties due on income earned by the Escrow Account. All Taxes (including any interest and penalties) due with respect to the income earned by the Escrow Account shall be paid from the Escrow Account. Saint-Gobain shall have no responsibility to make any filings relating to the Escrow Account and will have no responsibility to pay Tax on any income earned by the Escrow Account or to pay any Taxes on the Escrow Account unless the Settlement is not consummated and the funds in the Escrow Account are

returned to Saint-Gobain. In the event the Settlement is not consummated, Saint-Gobain shall be responsible for the payment of all Taxes (including any interest or penalties) on any gain, if any, on such said returned funds.

g.      The Escrow Account is intended by the Parties to be treated as a "qualified settlement fund" (a "QSF") for U.S. federal income tax purposes pursuant to Treas. Reg. § 1.468B-1, *et seq.*, and to that end the Parties shall cooperate with each other and the Settlement Administrator in providing any statements or making any elections or filings or taking any other actions to satisfy all requirements for such treatment and shall not take a position in any filing or before any tax authority that is inconsistent with such treatment, except as otherwise required pursuant to a "determination" within the meaning of Section 1313 of the Internal Revenue Code of 1986, as amended (the "Code"). Without limiting the foregoing, at the request of Saint-Gobain, a "relation back election" as described in Treas. Reg. § 1.468B-1(j) shall be made so as to enable the Escrow Account to be treated as a QSF from the earliest date possible, and the Parties shall take all actions as may be necessary or appropriate to this end. Saint-Gobain shall be the "transferor" to the QSF within the meaning of Treas. Reg. § 1.468B-1(d)(1) with respect to the Settlement Amount. The Settlement Administrator shall be the "administrator" of the QSF within the meaning of Treas. Reg. § 1.468B-1(k)(3), responsible (in addition to those responsibilities set forth in the immediately preceding paragraph) for complying with any applicable information reporting or tax withholding requirements on or with respect to the QSF (including the distribution of any amount to any Releasing Party from the Escrow Account) consistent with Treas. Reg. § 1,468B-2(l)(2) or

any other applicable tax law. The Settlement Administrator shall deliver to Saint-Gobain prior to the deposit of the Settlement Amount into the Escrow Account a properly completed and duly executed Internal Revenue Service Form W-9 from the QSF.

h.      The Releasees do not make and have not made any representations regarding the taxability of any settlement benefit, fee award, and/or any other payments made pursuant to this Settlement or Agreement. Plaintiffs and Settlement Class Counsel on behalf of themselves and Settlement Class Members represent that they have not relied upon any representation of Saint-Gobain, its attorneys, or the Releasees on the subject of taxability of any consideration provided pursuant to this Settlement or Agreement. Plaintiffs and Settlement Class Counsel on behalf of themselves and Settlement Class Members understand and expressly agree that any income or other Tax, including any interest, penalties, or other payment obligations ultimately determined to be payable from or with respect to any settlement benefit, fee award and/or any other payments made pursuant to this Settlement or Agreement, as well as any state or federal reporting obligations imposed on them arising therefrom or attributable thereto, shall not be the responsibility of either Saint-Gobain or the Releasees.

i.      In the event that this Agreement is disapproved, disallowed, terminated, rescinded, or otherwise fails to become effective for any reason (including after appeal), Plaintiffs and/or Settlement Class Counsel shall reimburse to Saint-Gobain via wire transfer within fifteen (15) days of notice of the disapproval, rescission, termination, or failure of the Agreement to be effective all funds remaining in the

Escrow Account at that time, including any interest accrued thereon, less any expenses paid or incurred by Settlement Class Counsel under Paragraph 11 in attempting to effectuate the settlement contemplated herein and/or performing their obligations under this Agreement. Saint-Gobain shall provide Settlement Class Counsel with wire transfer instructions for this transfer upon notice that the Agreement is disapproved, rescinded, or has otherwise failed to become effective. Within the same fifteen (15) days, Settlement Class Counsel shall ensure that the Settlement Administrator also provides Saint-Gobain full and complete information related to the Escrow Account to enable Saint-Gobain to determine whether any Taxes may be owed on the funds returned to Saint-Gobain.

9. **CLASS ADMINISTRATION AND NOTICE.**

   a.    The Settlement Administrator and Escrow Agent, if applicable, shall be approved by the Court and, if approved, overseen by Settlement Class Counsel following the Effective Date.

   b.    Plaintiffs shall be solely responsible for the payment of all costs and fees associated with Settlement Administration, including the costs and fees charged by the Settlement Administrator for work performed by the Settlement Administrator under this Agreement (excluding, for the avoidance of doubt, any Taxes, penalties, or other assessments imposed by a taxing authority in connection with Settlement Administration); provided, however all such fees, costs, or expenses shall be paid solely from the Settlement Amount.

   c.    Saint-Gobain shall not be responsible for paying any amount related to Settlement Administration or the Settlement Administrator.

    d.      The procedures related to Settlement Administration shall be jointly agreed upon by the Parties.

    e.      Plaintiffs will make reasonable efforts to notice multiple settlements with multiple Defendants in a single notice to the extent possible.

    f.      If necessary, the Settlement Administrator will consult with Settlement Class Counsel to answer any questions or resolve any disputes that arise.

    g.      At no time and under no circumstances shall Plaintiffs, Saint-Gobain, Settlement Class Counsel, counsel for Saint-Gobain, the Releasors, or the Releasees have any liability for claims of wrongful or negligent conduct on the part of the Settlement Administrator or its agents.

    h.      Notice to Settlement Class Members of this Agreement, as well as opt-out procedures and timing, shall be in conformance with the Notice Plan approved by the Court, after submission of the Notice Motion by Plaintiffs.

**10.**    <u>**EXCLUSIONS**</u>.

    a.      Saint-Gobain reserves all legal rights and defenses with respect to any potential Settlement Class Member that requests exclusion.

    b.      Subject to Court approval, a request for exclusion must be in writing and state the full name, street address, telephone number, and email address of the person or entity seeking exclusion from the Settlement Class by the Opt-Out Deadline. Further, the written request for exclusion must include a statement that he, she, or it wishes to be excluded from the Settlement. Subject to Court approval, a request for exclusion that does not comply with these and any other requirements set forth in the Class Notice shall be invalid, and each person or entity submitting an invalid

request shall be deemed a Settlement Class Member and shall be bound by this Agreement upon Final Approval. In the event that any person or entity validly requests exclusion from the Settlement Class and also submits a valid and timely objection to the Settlement, the objection shall be deemed controlling and the request for exclusion shall be null and void.

c.      Saint-Gobain or Settlement Class Counsel may dispute an exclusion request in accord with the Notice Plan approved by the Court.

d.      No later than ten (10) days after the close of a Court-approved Opt-Out Deadline, the Settlement Administrator shall provide Settlement Class Counsel and counsel for Saint-Gobain: (i) a list of the Opt-Outs; (ii) the amount of known CCA revenues that each Opt-Out paid during the settlement class period; and (iii) the details outlining the scope, methods, and results of the notice program.

e.      Plaintiffs, Settlement Class Counsel, Saint-Gobain, and Saint-Gobain's counsel covenant and agree to take no actions, directly or indirectly, designed or intended to influence any member or putative member of the potential Settlement Class to opt out of the Settlement, or to assist others in doing so.

11.    **PAYMENT OF EXPENSES**.

a.      Subject to Court approval, disbursements for payment of expenses associated with providing notice of the Settlement to the Settlement Class, expenses for maintaining and administering the Settlement Fund, and Taxes and expenses paid or incurred in connection with taxation matters related to the Settlement Fund may be paid by Settlement Class Counsel from the Settlement Fund and shall not be refundable to Saint-Gobain in the event the Agreement is disapproved, rescinded, or otherwise

fails to become effective, to the extent such expenses have actually been expended or incurred.

b.    Any refund that becomes owed to Saint-Gobain if this Settlement does not become final or is rescinded or otherwise fails to become effective may be paid out of the Escrow Account without approval of the Court. Other than as set forth in this Paragraph, Saint-Gobain shall not be liable for any of Plaintiffs' or other potential Settlement Class Members' costs or expenses of the litigation of the Action, including attorneys' fees, fees and expenses of expert witnesses and consultants, and costs and expenses associated with discovery, motion practice, hearings before the Court, appeals, trials or the negotiation of other settlements, or for class administration and costs.

c.    To mitigate the costs of notice and administration, Plaintiffs shall use their best efforts, if practicable, to disseminate notice of this Settlement together with notice of any other settlements in the Action and to apportion the costs of notice and administration on a pro rata basis across the applicable settlements.

d.    For the avoidance of doubt, the Settlement Amount shall constitute the total amount to be paid by Saint-Gobain in settlement of the claims made by Plaintiffs and the Settlement Class in the Action.

12.    **THE SETTLEMENT FUND.**

a.    The Releasors shall look solely to the Settlement Fund for settlement and satisfaction, as provided herein, of all Released Claims against the Releasees, and shall have no other monetary recovery against the Releasees as to the Released Claims.

b.   After this Agreement becomes final within the meaning of Paragraph 2, the Settlement Fund shall be distributed in accordance with a Plan of Allocation to be submitted to the Court at the appropriate time by Settlement Class Counsel, subject to approval by the Court. Saint-Gobain will take no position with respect to such proposed Plan of Allocation or such plan as may be approved by the Court. In no event shall any of the Releasees have any responsibility, financial obligation, or liability whatsoever with respect to the investment, distribution, allocation, or administration of the Settlement Fund, except as expressly otherwise provided in Paragraph 11.

c.   Plaintiffs and Settlement Class Counsel shall be reimbursed and indemnified solely out of the Settlement Fund for all expenses and costs, as provided by Court order and the provisions of Paragraph 11. The Releasees shall not be liable for any costs, fees, or expenses of Plaintiffs' or the Settlement Class's respective attorneys, experts, advisors, agents, or representatives. Instead, all such costs, fees, and expenses as approved by the Court, or authorized by Paragraph 11, shall be paid out of the Settlement Fund.

13.   **FEES, EXPENSES, AND SERVICE AWARDS**.

a.   Any attorneys' fees, expenses, and Service Awards shall be paid from the Settlement Amount and separately approved by the Court. Such fees, expenses, and/or Service Awards, if any, shall be payable immediately upon the entry of the order approving such, or at such later date as required by the Court, subject to repayment if the Settlement does not become final.

b.  The Releasees under this Agreement shall have no responsibility for, or interest in, or liability whatsoever with respect to any payment to Settlement Class Counsel and/or Plaintiffs of any fee and expense award, or Service Award, in the Action.

c.  The Releasees under this Agreement shall have no responsibility for, or interest in, or liability whatsoever with respect to the allocation among Settlement Class Counsel and/or any other person who may assert some claim thereto, of any fee and expense award that the Court may make in the Action.

d.  Nothing in this Paragraph 13, nor anything related to Settlement Class Counsel's request(s) for fees, costs, or expenses shall impact the finality of this Agreement, regardless of what any court may decide about Settlement Class Counsel's entitlement to attorneys' fees, costs, or expenses or any other aspect of this Paragraph. No order of a court or modification or reversal on appeal of any order of the Court concerning any attorney's fees, costs, expenses, or Service Awards shall constitute grounds for termination of this Agreement, provided that it does not otherwise affect the rights of Saint-Gobain or the Releasees under this Agreement.

14.  **NON-MONETARY CONSIDERATION**.

a.  Saint-Gobain agrees to provide the Non-Monetary Consideration specified in Paragraphs 14(a)(i)-(x). Such Non-Monetary Consideration will be limited to the subject matter of the Released Claims, and will continue until the date when final judgment has been rendered, with no remaining rights of appeal, in the Action against the remaining Defendants. Saint-Gobain's obligation to provide Non-Monetary Consideration will terminate in the event any of the criteria of Paragraph

15 are satisfied . Subject to any limitations set forth below in Paragraphs 14(b)-(d), Saint-Gobain shall provide the following Non-Monetary Consideration:

i.  *Information Necessary to Provide Notice to Settlement Class*: At Saint-Gobain's expense, to the extent such information is reasonably available and in Saint-Gobain's possession within thirty (30) days of Preliminary Approval, Saint-Gobain shall produce to Plaintiffs information required to provide notice to the Settlement Class, as the Settlement Administrator may require, including but not limited to the names, addresses, and email addresses of customers that purchased CCAs from Saint-Gobain in the United States and its territories.

ii.  *Production of Documents:* At Saint-Gobain's expense and within five (5) days of Preliminary Approval, Saint-Gobain shall produce to Plaintiffs all documents relevant to the subject matter of the Released Claims. This obligation is continuing in nature, and Saint-Gobain shall notify Plaintiffs within fourteen (14) days of subsequently identifying additional relevant documents, and the Parties shall meet and confer regarding a timeline for the production of such documents to Plaintiffs.

iii.  *Transactional Data*: At Saint-Gobain's expense, within thirty (30) days of Preliminary Approval, and to the extent reasonably available, Saint-Gobain shall complete its production of transactional data (including sales and cost data) related to CCAs purchased or sold in the United States or its territories for the period January 1, 2017 to November 29, 2023, inclusive. In addition, Saint-Gobain's counsel shall use its best efforts to promptly respond to

26

questions from Settlement Class Counsel on the transactional data that Saint-Gobain has produced or will produce. For the avoidance of doubt, time spent responding to questions from Settlement Class Counsel shall not count against the proffer time agreed to in Paragraphs 14(a)(v) and 14(a)(vi), *infra*.

iv.    *Opening Proffer*: At Saint-Gobain's expense and within thirteen (13) days after July 11, 2025, or within three (3) days of the Parties reaching an agreement on the Opt-Out Threshold, whichever is later, Saint-Gobain's counsel shall meet with Settlement Class Counsel for up to seven (7) hours, at an agreed-upon location, or virtually if in-person attendance is not possible or not desirable, and provide a reasonably detailed description of the principal facts known to Saint-Gobain that are relevant to the alleged conduct at issue in this Action, including by showing and identifying documents, by Bates Numbers or other document identifiers, that are relevant to the alleged conduct at issue in this Action. Counsel for Saint-Gobain shall also attempt to answer in good faith any follow-up questions Settlement Class Counsel have during the Opening Proffer.

v.    *Follow-up Proffer:* At Saint-Gobain's expense and within thirty (30) days after Preliminary Approval or at such other time as may be agreed to by the Parties, Saint-Gobain's counsel shall meet with Settlement Class Counsel for up to seven (7) additional hours, at an agreed upon location or virtually if in-person attendance is not possible or not desirable, and provide a reasonably detailed description of the principal facts known to Saint-Gobain

that are responsive to Plaintiffs' reasonable follow-up questions flowing from the Opening Proffer, including identifying documents by Bates Number that are relevant to responding to those reasonable follow-up questions.

vi.   *Interviews.* Upon reasonable notice and at Saint-Gobain's expense and within sixty (60) days after Preliminary Approval or at such other time as may be agreed to by the Parties, Saint-Gobain shall use its best efforts to make available for interviews with Settlement Class Counsel up to three (3) current Saint-Gobain employees with knowledge of the industry and the events at issue in the Action designated by Settlement Class Counsel at mutually agreeable date(s), time(s), and location(s), but in any event, beginning at least by thirty (30) days following the opening of fact discovery in the Action and in advance of trial. To the extent that any of the three (3) Saint-Gobain employees selected by Settlement Class Counsel for interviews are former employees, Saint-Gobain shall use its best efforts to assist Settlement Class Counsel in arranging interviews with those former Saint-Gobain employees. Following the interviews with the initially selected three (3) employees, the Parties will meet and confer in good faith to assess the necessity of conducting one (1) additional interview. Any interview of a French citizen currently residing in France will be conducted remotely, in France, or at such other another location mutually agreeable to the Parties.

vii.    *Depositions*: Upon reasonable notice and at Saint-Gobain's expense and after Preliminary Approval but sufficiently in advance of the close of fact discovery in the Action, Saint-Gobain shall use its best reasonable efforts to make available for deposition in the United States up to two (2) current or former employees for a Rule 30(b)(1) deposition, as well as witness(es) for one 30(b)(6) deposition. In addition, the Parties will meet and confer in good faith about any request by Settlement Class Counsel for additional deposition(s). Such depositions shall occur at mutually agreeable date(s) time(s), and location(s), and the Parties will work together in good faith in an effort to have these depositions take place without the need for Plaintiffs to issue subpoenas or go through the Hague Convention. However, to the extent subpoena(s) or proceeding through the Hague Convention are required, Saint-Gobain shall use its best reasonable efforts to assist Plaintiffs in complying with any required process, including by obtaining the consent of the witness(es). The depositions of the witnesses represented by Saint-Gobain's counsel, or for whom Saint-Gobain is providing counsel, shall be administered according to the rules and limitations of the Federal Rules of Civil Procedure, regardless of the location in which they take place or the citizenship of the witness.

viii.    *Trial Witnesses*: Upon reasonable notice and at Saint-Gobain's expense and after Preliminary Approval, Saint-Gobain shall use its best efforts to provide up to four (4) trial witnesses, to be negotiated and agreed upon by the Parties, to provide truthful testimony at trial. In addition, the Parties will

meet and confer in good faith about any request by Plaintiffs for additional trial witness(es), and the Parties will work together in good faith in an effort to secure these trial witnesses without the need for Plaintiffs to issue subpoenas or go through the Hague Convention. However, to the extent subpoena(s) or proceeding through the Hague Convention are required, Saint-Gobain shall use its best reasonable efforts to assist Plaintiffs in complying with any required process, including by obtaining the consent of the witness(es).

ix. *Declarations or Certifications:* Upon reasonable notice and at Saint-Gobain's expense and after Preliminary Approval, Saint-Gobain shall provide Plaintiffs declarations or certifications to establish in discovery, and if necessary at trial that, if believed to be true and accurate, the document, ESI, or data previously produced by Saint-Gobain is genuine, authentic, and a record of a regularly conducted activity pursuant to Federal Rule of Evidence 803(6). To the extent Saint-Gobain believes that any such declarations or certifications are not permitted by law, Saint-Gobain shall promptly inform Plaintiffs of such belief, and the Parties shall thereafter meet and confer in good faith in an attempt to reach an agreeable resolution.

x. *Other.* Saint-Gobain agrees to meet and confer in good faith regarding future requests from Plaintiffs for documents, data, and other information beyond the items specified in Paragraph 14(a)(i-ix) in order to obtain approval of the Settlement or to prosecute the Action against the other Defendants. Saint-Gobain need not agree to additional requests (i) that are

unreasonable or unduly burdensome or (ii) for which Plaintiffs cannot demonstrate a need that cannot be reasonably met through alternative means. In the event the Parties cannot agree on any such requests after meeting and conferring in good faith, such disputes shall be resolved by the Court.

b.    Nothing contained in Paragraphs 14(a)(i-x) shall require Saint-Gobain to (i) provide Non-Monetary Consideration that would violate any court order or any law, regulation, policy, or other rule of, or express objection from, any regulatory agency or governmental body restricting disclosure of documents or information, provided, however, that to the extent that Saint-Gobain is aware that such documents or information exist, the Parties will meet and confer in good faith regarding Saint-Gobain's withholding of the documents or information; (ii) provide information that is duplicative of information, documents, or data Saint-Gobain has already produced in the Action; (iii) create translations of documents for use by Settlement Class Counsel that do not already exist as of the Execution Date; (iv) disclose information to Settlement Class Counsel that is protected by the attorney-client privilege, attorney work-product doctrine, common interest doctrine, joint defense privilege, and/or any other applicable privilege or protection.

c.    For the avoidance of doubt, Saint-Gobain may assert the work-product doctrine, the attorney-client privilege, the common interest privilege, the joint defense privilege, obligations under applicable data privacy laws or regulations, and/or any other applicable privilege or protection with respect to any documents, material, and/or information requested under this Agreement. The production of any such document

31

alone shall not be construed to be a waiver of any privilege, protection, or prohibition otherwise attached to such document. Saint-Gobain's counsel will meet and confer with Settlement Class Counsel as is reasonably necessary to discuss any applicable assertion of domestic or foreign privilege, protection, or prohibition. To the extent Saint-Gobain withholds any documents or information on the basis of any privilege or protection, the Parties will negotiate and agree on an approach for Saint-Gobain to substantiate its assertions of privilege or protection in a manner that enables Settlement Class Counsel to assess such assertion(s), if any..

d.      The Non-Monetary Consideration provided pursuant to this Paragraph 14 by Saint-Gobain and/or their representatives shall be used by Plaintiffs solely in connection with the prosecution of the Action but not for the institution or prosecution of any other action or other proceeding against Saint-Gobain or any of the Releasees for any purpose whatsoever, including but not limited to actions or proceedings in jurisdictions outside the United States. The confidentiality of such cooperation shall be governed by the Protective Order, ECF No. 261, in effect in the Action.

15. **TERMINATION AND RESCISSION.**

a.      *No Reversion.* There will be no reversion of the Settlement Amount or opt-out reduction to Saint-Gobain or any other person or entity funding the Settlement Amount, other than as provided in Paragraph 15(b).

b.      *Conditions for Recission.* The Parties agree that they will not enter into any agreement allowing for the recission of the Agreement other than if (i) the Court refuses to grant preliminary or final approval of this Agreement or to certify the Settlement Class; (ii) preliminary or final approval of this Agreement or

certification of the Settlement Class is set aside on appeal; (iii) the Court does not enter final judgment with respect to Saint-Gobain; or (d) the Court enters final judgment with respect to Saint-Gobain, appellate review is sought, and, upon such review, final judgment is not affirmed; or (e) the Opt-Out Threshold described in Paragraph 15(c) is reached and Saint-Gobain exercises its right under that Paragraph. An order by the Court refusing to approve or modifying, or an order from an appellate court reversing or modifying, any fee and expense award shall not be deemed a modification of all or part of the terms of the Agreement or the final judgment and order, and shall not, by itself, give rise to any right of termination.

c.   *Right to Recission Based on Opt-Outs.* Prior to the Opening Proffer(s) described in Paragraph 14, the Parties will meet and confer in good faith to reach agreement on a mutually agreeable Opt-Out Threshold in connection with the preparation of the Agreement, to be contained in a separate Confidential Supplement. If the Opt-Out Threshold is reached, then Saint-Gobain shall have the right, but not the obligation, in its sole discretion, to rescind the Agreement by providing written notice to Settlement Class Counsel, as appropriate, in accordance with the terms of the Confidential Supplement.

d.   *Termination of Settlement.* In the event of termination or rescission pursuant to this Paragraph 15, then: (i) within fifteen (15) days, the Settlement Amount (including accrued interest), less expenses and costs used or incurred for Class Notice and costs of Settlement Administration, if any, shall be refunded from the Escrow Account (by the Escrow Agent, if applicable) to Saint-Gobain pursuant to written

instructions from Saint-Gobain's counsel to Settlement Class Counsel; and (ii) the Parties shall be deemed to have reverted to their respective status in the Action as of the Execution Date, and without waiver of any positions asserted in the Action as of the Execution Date. In such circumstances, except as otherwise expressly provided herein, the Parties shall proceed in all respects as if the Agreement had not been executed.

e.    Plaintiffs, the Settlement Class, Settlement Class Counsel, and Saint-Gobain agree that, whether or not the Court finally approves the Agreement, neither the fact of nor the content of settlement negotiations, discussion, or attorney proffers will constitute admissions, nor be used as evidence of any violation of any statute or law, or of any liability or wrongdoing by Saint-Gobain or any Releasee, or of the truth of any of the claims or allegations contained in the Action or any pleading filed by Plaintiffs, the Settlement Class, or Settlement Class Counsel in the Action, and any evidence of such negotiations, discussions, and proffers are not discoverable, and Plaintiffs and the Settlement Class cannot use them directly or indirectly except in a proceeding to enforce or interpret the Agreement. Nothing in this Agreement shall affect the application of Federal Rule of Evidence 408.

16.    <u>**NO ADMISSION OF LIABILITY**</u>.

a.    The Parties expressly agree that this Agreement, whether or not it shall become final, and any and all negotiations, documents, and discussions associated with it, shall not be deemed or construed to be an admission or evidence of (i) a violation of any statute or law or of any liability or wrongdoing whatsoever by Saint-Gobain, or any Releasees, or of (ii) the truth or the merits of any of the claims or allegations

contained in the Complaint or any other pleading filed in the Action, and shall not be used against Saint-Gobain or the other Releasees, and evidence thereof shall not be discoverable or used in any way, whether in the Action or in any other action or proceeding, against Saint-Gobain or the Releasees.

b.    Nothing in this Paragraph 16 shall prevent Plaintiffs from using information produced by Saint-Gobain pursuant to the Non-Monetary Consideration provisions of this Agreement against non-settling Defendants to establish (i) or (ii) above pursuant to the limitations set forth in Paragraph 14.

17.    **J̲O̲I̲N̲T̲ ̲A̲N̲D̲ ̲S̲E̲V̲E̲R̲A̲L̲ ̲L̲I̲A̲B̲I̲L̲I̲T̲Y̲ ̲P̲R̲E̲S̲E̲R̲V̲E̲D̲**.

a.    This Agreement does not settle or compromise any claim by Plaintiffs or any Settlement Class Member asserted against any Defendant or alleged co-conspirator other than Saint-Gobain and the Releasees.

b.    All claims against such other Defendants or alleged co-conspirators are specifically reserved by Plaintiffs and the Settlement Class. All claims based on the alleged illegal conduct and sale of CCAs by any Settlement Class Member against any and all former, current, or future Defendants or co-conspirators or any other person other than Saint-Gobain and the Releasees are specifically reserved by Plaintiffs and members of the Settlement Class.

c.    Saint-Gobain's and the other Releasees' sales of CCAs to the Settlement Class and their alleged illegal conduct shall, to the extent permitted or authorized by law, remain in the Action as a potential basis for damage claims and shall be part of any joint and several liability claims against other current or future Defendants in the Action or other persons or entities other than Saint-Gobain and the other Releasees.

35

Saint-Gobain and the Releasees shall not be responsible for any payment to Plaintiffs or the Settlement Class other than the Settlement Amount and the amounts specifically agreed to in Paragraph 11.

18. **CONFIDENTIALITY**.

a. *Generally*: The Parties and their respective attorneys agree that prior to the filing of motions for preliminary approval, this Agreement and the Settlement Amount are and shall be treated as confidential and shall not be disclosed, described, or characterized to any other person, attorney, entity, publication, or member of the media. The Parties and their respective attorneys also agree not to disclose the substance of the negotiations that led to this Agreement, including the merits of any positions taken by any party, except as necessary to provide the Court with information necessary to consider approval of the Settlement.

b. *Exceptions*: Notwithstanding the foregoing, any Party may disclose the following: (1) information concerning the Agreement to a regulatory authority if the Party determines that disclosure is warranted, provided, however, the Party intending to disclose such information will notify the other Party of its intention and give the non-disclosing Party a reasonable opportunity to object; (2) the fact that an agreement has been reached to the Court, provided, however, the Parties shall meet and confer in good-faith regarding the language to be used in any such notification to the Court;; and (3) information as may be required by law, judicial process, or order of a court, to enforce the terms of the Agreement, or as otherwise agreed by the Parties.

    c.    *Motion to Seal Requirement*: Concurrently with the filing of the Amended Complaint, and to the extent Plaintiffs rely on information provided to them pursuant to Paragraph 14 above, Plaintiffs shall file a motion to seal those portions of the Amended Complaint and any accompanying exhibits that rely upon or reference any such information. Provided, however, that the procedure employed by Plaintiffs will be consistent with the Protective Order entered in the Action, as well as any applicable Local Rules or Individual Rules of Practice. To the extent consistent with the Protective Order, Local Rules, and Individual Rules of Practice, Plaintiffs acknowledge that the motion to seal is subject to approval by the Court and agree to use best efforts to support the motion, including but not limited to providing necessary justifications and case law to support the sealing of the Amended Complaint and any exhibits.

19.    **NON-DISPARAGEMENT**. The Parties agree they will not disparage one another or their respective claims or defenses, such as by making public statements that disparage the Parties or their conduct in connection with the Action, and instead will confine their public comments to essentially the following: "The Parties have agreed to resolve this matter. Saint-Gobain has not admitted any liability and continues to deny the allegations in Plaintiffs' complaint, while Plaintiffs believe they would have prevailed in their claims against Saint-Gobain."

20.    **CAFA**. Saint-Gobain shall submit all materials required to be sent to appropriate federal and state officials pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1715 ("CAFA"), and shall notify the Court that CAFA compliance has been accomplished.

21.    **RESOLUTION OF DISPUTES/JURISDICTION**.

    a.    The Court shall retain jurisdiction over the implementation, interpretation,

enforcement, and performance of this Agreement, and shall have exclusive jurisdiction over any suit, action, proceeding, or dispute arising out of or relating to this Agreement or the applicability of this Agreement that cannot be resolved by negotiation and agreement by Plaintiffs and Saint-Gobain, including challenges to the reasonableness of any Party's actions.

b.     Saint-Gobain will not object to complying with any of the provisions outlined in this Agreement on the basis of jurisdiction. The Parties also agree that, in the event of such dispute, they are and shall be subject to the jurisdiction of the Court and that the Court is a proper venue and convenient forum.

22.    **ENTIRE AGREEMENT**.

a.     Together with the Confidential Supplement referenced in Paragraph 15 above, this Agreement constitutes the entire, complete, and integrated agreement between Plaintiffs and Saint-Gobain pertaining to the settlement of the Action against Saint-Gobain, and supersedes all prior and contemporaneous undertakings, communications, representations, understandings, negotiations, and discussions, either oral or written, between Plaintiffs and Saint-Gobain in connection herewith.

b.     Neither this Agreement, nor the Confidential Supplement, may be modified or amended except in writing executed by Plaintiffs and Saint-Gobain, and approved by the Court.

23.    **BINDING EFFECT AND COURT CONTINGENCY**.

a.     This Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of Plaintiffs and Saint-Gobain. Without limiting the generality of the foregoing, upon Final Approval of this Agreement, each and every covenant and

agreement made herein by Plaintiffs or Settlement Class Counsel shall be binding upon all Settlement Class Members and Releasors.

b.    The Releasees (other than the Saint-Gobain entities, which are parties to this Agreement) are third-party beneficiaries of this Agreement and are authorized to enforce its terms applicable to them.

c.    Nothing expressed or implied in this Agreement is intended to or shall be construed to confer upon or give any person or entity other than Settlement Class Members, Releasors, and Releasees any right or remedy under or by reason of this Agreement.

d.    This entire Agreement is contingent upon court approval, and absent court approval, the Agreement will be null and void and have no binding effect.

24.    **EXECUTION IN COUNTERPARTS**. This Agreement may be executed in counterparts by Plaintiffs and Saint-Gobain, and a facsimile or Portable Document Format (.pdf) image of a signature shall be deemed an original signature for purposes of executing this Agreement.

25.    **NOTICE**. Where this Agreement requires any Party to provide notice or any other communication or document to another, such notice shall be in writing, and such notice, communication, or document shall be provided by facsimile, or electronic mail (provided that the recipient acknowledges having received that email, with an automatic "read receipt" or similar notice constituting an acknowledgement of an email receipt for purposes of this Paragraph 25), or letter by overnight delivery to the undersigned counsel of record for the Party to whom notice is being provided.

26.    **PRIVILEGE**.

a.    Nothing in this Agreement is intended to waive any right to assert that any information or material is protected from discovery by reason of any individual or

39

common interest privilege, attorney-client privilege, work product protection, or other privilege, protection, or immunity, or is intended to waive any right to contest any such claim of privilege, protection, or immunity.

b.    To the extent Saint-Gobain withholds any documents or information on the basis of any privilege or protection, the Parties will negotiate and agree on an approach for Saint-Gobain to substantiate its assertions of privilege or protection in a manner that enables Settlement Class Counsel to assess such assertion(s), if any.

27.    **VOLUNTARY SETTLEMENT AND AGREEMENT; ADVICE OF COUNSEL**.

a.    Each Party agrees and acknowledges that it has (a) thoroughly read and fully understands this Agreement and (b) received or had an opportunity to receive independent legal advice from attorneys of its own choice with respect to the advisability of entering into this Agreement and the rights and obligations created by this Agreement.

b.    Each Party agrees that this Agreement was negotiated in good faith by the Parties, and reflects a settlement that was reached voluntarily after consultation with competent legal counsel. Each Party enters into this Agreement knowingly and voluntarily, in consideration of the promises, obligations, and rights set forth herein.

28.    **NO PARTY IS THE DRAFTER**.

a.    This Agreement was jointly negotiated, prepared, and drafted by Settlement Class Counsel and counsel for Saint-Gobain.

b.    None of the Parties hereto shall be considered to be the drafter of this Agreement or any provision hereof for the purpose of any statute, case law, or rule of

interpretation or construction that would or might cause any provision to be construed against the drafter thereof.

**29.    <u>HEADINGS</u>**. The headings used in this Agreement are intended for the convenience of the reader only and shall not affect the meaning or interpretation of this Agreement.

**30.    <u>OPPORTUNITY TO CURE</u>**: If one Party to this Agreement considers another Party to be in breach of its obligations under this Agreement, that Party must provide the breaching Party with written notice of the alleged breach and provide a reasonable opportunity to cure the breach before taking any action to enforce any rights under this Agreement.

**31.    <u>GOVERNING LAW</u>**: All terms of this Agreement shall be governed and interpreted according to the substantive laws of the State of New York without regard to its choice of law or conflict of laws principles.

**32.    <u>REASONABLE EXTENSIONS</u>**: Unless otherwise ordered by the Court, the Parties may jointly agree to reasonable extensions of time to carry out any of the provisions of this Agreement.

**33.    <u>COUNSEL'S EXPRESS AUTHORITY</u>**. Each of the undersigned attorneys represents that he or she is fully authorized to enter into the terms and conditions of, and to execute, this Agreement on behalf of his or her respective client(s), subject to Court approval.

Dated: August 10, 2025

Dated: August 10, 2025

*Nathaniel Giddings*

Nathaniel C. Giddings
**HAUSFELD LLP**
888 16th Street NW, Suite 300
Tel: (202) 540-7200
Fax: (202) 540-7201
ngiddings@hausfeld.com

Jeannine Kenney
**HAUSFELD LLP**
325 Chestnut Street, Suite 900
Philadelphia, PA 19106
Tel: (215) 985-3270
Fax: (215) 985-3271
jkenney@hausfeld.com

Scott Martin
**HAUSFELD LLP**
33 Whitehall Street, 14th Floor
New York, NY 10004
Tel: (646) 357-1100
Fax: (212) 202-4322
smartin@hausfeld.com

Michael P. Lehmann
Emma Blake
**HAUSFELD LLP**
600 Montgomery Street, Suite 3200
San Francisco, CA 94111
Tel: (415) 633-1908
Fax: (415) 633-4980
mlehmann@hausfeld.com
eblake@hausfeld.com

*Interim Lead Class Counsel for the Direct
Purchaser Plaintiffs*

*Maggy Sullivan*

Marguerite M. Sullivan
**LATHAM & WATKINS LLP**
555 Eleventh Street NW, Suite 1000
Washington, D.C. 20004
Tel: (202) 637-2200
marguerite.sullivan@lw.com

Elizabeth B. Prewitt
**LATHAM & WATKINS LLP**
1271 Avenue of the Americas
New York, NY 10020
Tel: (202) 906-1200
elizabeth.prewitt@lw.com

*Attorneys for Defendants Compagnie de
Saint-Gobain, S.A., Saint-Gobain
Corporation, Chryso S.A.S., Chryso, Inc.,
and GCP Applied Technologies, Inc.*