**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

IN RE: CONCRETE AND CEMENT
ADDITIVES ANTITRUST LITIGATION

*This Document Relates to:*
*All Direct Purchaser Plaintiff Actions.*

1:24-cv-3056-LJL
1:24-cv-3033-LJL
1:24-cv-3045-LJL
1:24-cv-3246-LJL
1:24-cv-3236-LJL
1:24-cv-3806-LJL

Case No. 24-MD-3097 (LJL)

**MEMORANDUM OF LAW IN SUPPORT OF DIRECT PURCHASER PLAINTIFFS'**
**MOTION FOR PRELIMINARY APPROVAL OF THE SETTLEMENT WITH SAINT-**
**GOBAIN AND CERTIFICATION OF THE PROPOSED SETTLEMENT CLASS**

## TABLE OF CONTENTS

I.     INTRODUCTION..................................................................................................1

II.    BACKGROUND ..................................................................................................2

    A.   Procedural History........................................................................................2

    B.   Settlement Negotiations................................................................................3

    C.   Settlement Terms. ........................................................................................4

III.   ARGUMENT .......................................................................................................6

    A.   The Court Should Preliminarily Approve the Settlement. ...............................6

       1.   *The Settlement is Procedurally Fair.*................................................8

          i)   DPPs and Hausfeld have adequately represented the Class............................8

          ii)   The Settlement was negotiated at arm's-length. ...............................9

       2.   *The Settlement is Substantively Fair.*...............................................9

          i)   The Settlement provides meaningful relief for the Settlement Class. ............9

          ii)   The Settlement treats Settlement Class members equitably. ........................16

    B.   The Court Should Certify the Direct Purchaser Settlement Class................17

       1.   *The Settlement Class Satisfies Rule 23(a).*......................................17

       2.   *The Settlement Class Satisfies Rule 23(b)(3).*..................................20

    C.   The Court Should Appoint Hausfeld as Settlement Class Counsel and Named DPPs as Settlement Class Representatives........................................23

    D.   The Court Should Appoint Huntington as the Escrow Agent and JND as the Settlement Administrator.................................................................23

    E.   The Court Should Defer Notice. ................................................................23

IV.   CONCLUSION ................................................................................................25

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                       **Page(s)**

*In re Air Cargo Shipping Servs. Antitrust Litig.*,
  2014 WL 7882100 (E.D.N.Y Oct. 15, 2014)..........................................................................21

*In re Air Cargo Shipping Servs. Antitrust Litig.*,
  2011 WL 2909162 (E.D.N.Y. July 15, 2011)........................................................................16

*Albert v. Glob. Tel\*link Corp.*,
  2024 WL 4391866 (D. Md. Oct. 2, 2024) ............................................................................24

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997)..............................................................................................17, 21

*Amgen, Inc. v. Conn. Ret. Plans and Tr. Funds*,
  568 U.S. 455 (2013)....................................................................................................21

*In re AOL Time Warner, Inc.*,
  2006 WL 903236 (S.D.N.Y. Apr. 6, 2006).............................................................................14

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*,
  222 F.3d 52 (2d Cir. 2000).............................................................................................20

*Bolanos v. Norwegian Cruise Lines Ltd.*,
  212 F.R.D. 144 (S.D.N.Y. 2002) .......................................................................................19

*Bourlas v. Davis Law Assocs.*,
  237 F.R.D. 345 (E.D.N.Y. 2006) .......................................................................................18

*Caccavale v. Hewlett-Packard Co.*,
  WL 882220 (E.D.N.Y. Mar. 14, 2025)....................................................................................8

*Christine Asia Co. v. Yun Ma*,
  2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) ............................................................................7

*City of Detroit v. Grinnell Corp.*,
  495 F.2d 448 (2d Cir. 1974)................................................................................... *passim*

*Consol. Rail Corp. v. Town of Hyde Park*,
  47 F.3d 473 (2d Cir. 1995)............................................................................................17

*In re Currency Conversion Fee Antitrust Litig.*,
  264 F.R.D. 100 (S.D.N.Y. 2010) ...................................................................................20, 22

*D'Amato v. Deutsche Bank*,
  236 F.3d 78 (2d Cir. 2001)............................................................................................14

*Davis v. J.P. Morgan Chase & Co.*,
    827 F. Supp. 2d 172 (W.D.N.Y. 2011) ...................................................................14

*Erickson v. Jernigan Cap., Inc.*,
    692 F. Supp. 3d 114 (S.D.N.Y. 2023) ...................................................................18

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
    574 F.3d 29 (2d Cir. 2009) ...................................................................................19

*In re Flat Glass Antitrust Litig.*,
    191 F.R.D. 472 (W.D. Pa. 1999) ..........................................................................18

*Fleisher v. Phoenix Life Ins. Co.*,
    2015 WL 10847814 (S.D.N.Y. Sept. 9, 2015) ...........................................7, 10, 13

*Gen. Tel. Co. of Sw. v. Falcon*,
    457 U.S. 147 (1982) ..............................................................................................19

*In re GSE Bonds Antitrust Litig.*,
    414 F. Supp. 3d 686 (S.D.N.Y. 2019) ............................................................. *passim*

*In re IMAX Sec. Litig.*,
    283 F.R.D. 178 (S.D.N.Y. 2012) ....................................................................14, 15

*In re Indep. Energy Holdings PLC Sec. Litig.*,
    210 F.R.D. 476 (S.D.N.Y. 2002) ..........................................................................17

*Larsen v. JBC Legal Grp., P.C.*,
    235 F.R.D. 191 (E.D.N.Y. 2006) ..........................................................................17

*McKinney v. U.S. Postal Serv.*,
    292 F.R.D. 62 (D.D.C. 2013) ...............................................................................24

*Medina v. NYC Harlem Foods Inc.*,
    2022 WL 1184260 (S.D.N.Y. Apr. 21, 2022) .......................................................13

*In re MetLife Demutualization Litig.*,
    689 F. Supp. 2d 297 (E.D.N.Y. 2010) ..................................................................12

*Moses v. New York Times Co.*,
    79 F.4th 235 (2d Cir. 2023) ....................................................................................7

*In re NASDAQ Mkt.–Makers Antitrust Litig.*,
    169 F.R.D. 493 (S.D.N.Y. 1996) ....................................................................20, 21

*In re New Jersey Tax Sales Certification Antitrust Litig.*,
    No. 12-cv-1893 (D.N.J. Aug. 13, 2013) ...............................................................24

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
    330 F.R.D. 11 (E.D.N.Y. 2019) ...................................................................................21

*In re Playmobil Antitrust Litig.*,
    35 F. Supp. 2d 231 (E.D.N.Y. 1998) .........................................................................20

*Roach v. T.L. Cannon Corp.*,
    778 F.3d 401 (2d Cir. 2015) .......................................................................................21

*Robidoux v. Celani*,
    987 F.2d 931 (2d Cir. 1993) .......................................................................................19

*In re Salomon Analyst Metromedia Litig.*,
    544 F.3d 474 (2d Cir. 2008) ................................................................................21, 22

*Sonterra Cap. Master Fund, Ltd. v. Barclays Bank PLC*,
    2023 WL 3749996 (S.D.N.Y. June 1, 2023) .............................................................16

*Sullivan v. DB Invs., Inc.*,
    667 F.3d 273 (3d Cir. 2011) .......................................................................................16

*Vasquez v. A+ Staffing LLC*,
    746 F. Supp. 3d 26 (E.D.N.Y. 2024) ........................................................................12

*In re Visa Check/MasterMoney Antitrust Litig.*,
    280 F.3d 124 (2d Cir. 2001) .......................................................................................21

*In re Vitamin C Antitrust Litig.*,
    279 F.R.D. 90 (E.D.N.Y. 2012) ................................................................................22

*In re Vitamin C Antitrust Litig.*,
    2012 WL 5289514 (E.D.N.Y. Oct. 23, 2012) ...........................................................10

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ...................................................................................................18

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F.3d 96 (2d Cir. 2005) ...........................................................................................7

**Statutes**

Class Action Fairness Act of 2005, 28 U.S.C. § 1715 ....................................................24

Sherman Act Section 1, 15 U.S.C. § 1 ...................................................................2, 8, 16

**Other Authorities**

Fed. R. Civ. P. 23 .............................................................................................. *passim*

## I. INTRODUCTION

Direct Purchaser Plaintiffs ("DPPs")[1] and the undersigned Interim Lead Class Counsel for the Direct Purchaser Class ("Hausfeld") respectfully move for preliminary approval of the Settlement Agreement ("Settlement") between DPPs and Compagnie de Saint-Gobain, S.A., Saint-Gobain Corporation, Chryso S.A.S., Chryso, Inc., and GCP Applied Technologies, Inc. (collectively, "Saint-Gobain").[2]

Under the Settlement, Saint-Gobain will provide consideration of $1.5 million in cash to DPPs and valuable cooperation to assist DPPs in prosecuting their claims against the non-settling Defendants. Giddings Decl., Ex. A at ¶¶ 25-27. This Settlement was reached after extensive and often contentious arm's-length negotiations over the course of three months, including after this Court's order granting Defendants' motions to dismiss. *See* ECF No. 300. The Court should grant preliminary approval of this Settlement because it provides meaningful monetary relief and valuable cooperation at this stage of the litigation prior to filing of DPPs' Amended Complaint.

In addition to seeking preliminary approval, DPPs respectfully request that the Court certify the proposed direct purchaser Settlement Class for settlement purposes only under Rules 23(b)(3) and (e) of the Federal Rules of Civil Procedure; appoint the named DPPs as Settlement Class Representatives; appoint Hausfeld as Settlement Class Counsel; appoint Huntington Bank ("Huntington") as the Escrow Agent; and appoint JND Legal Administration ("JND") as the Settlement Administrator.

---

[1]     The named DPPs are M&D Peterson, LLC, Keystone Concrete Block & Supply Co. Inc., 570 Concrete, LLC, H&S Redi-Mix, Inc., J&L Imperium Industries, LLC, and Benevento Concrete Corp.

[2]     The Settlement is attached as Exhibit A to the Declaration of Nathaniel C. Giddings ("Giddings Decl."), filed concurrently herewith. Unless otherwise defined herein, all capitalized terms have the same meanings ascribed in the Settlement.

## II.    BACKGROUND

### A.    Procedural History.

In November 2023, DPPs began filing suits against the world's largest manufacturers of concrete admixtures, cement additives, admixtures for mortar, and products containing or bundled with any of the foregoing ("CCAs"), alleging that Defendants entered into a conspiracy to unlawfully fix, stabilize, and maintain prices for CCAs in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1. Giddings Decl. ¶ 9. On April 12, 2024, the Judicial Panel on Multidistrict Litigation centralized DPPs' cases in this Court for coordinated pretrial proceedings. ECF No. 1.

On July 9, 2024, the Court appointed Hausfeld LLP as Interim Lead Class Counsel for the Direct Purchaser Class and Berger Montague PC, Gustafson Gluek PLLC, and the Roberts Law Firm U.S., PC, as the Interim Executive Committee (collectively, "DPP Counsel"). ECF No. 120. On September 20, 2024, DPPs filed a Corrected Consolidated Class Action Complaint on behalf of themselves and the putative direct purchaser class. ECF No. 157; *see* Giddings Decl. ¶ 13.

In October 2024, the Department of Justice ("DOJ") moved to intervene in the Action for the purpose of seeking a limited stay of discovery during its criminal antitrust investigation, ECF No. 195, which the Court granted the next day, ECF No. 198. DOJ subsequently filed, and the Court entered, a limited stay of discovery. ECF Nos. 203, 206. That stay was subsequently extended to the date on which DPPs and/or the Indirect Purchaser Plaintiffs ("IPPs") file their forthcoming Amended Consolidated Class Action Complaints. ECF No. 303.

Since then, DPP Counsel have engaged in extensive negotiations with Defendants over DPPs' requests for certain permitted discovery, including Defendants' transactional data. *See* ECF No. 264. To date, while most Defendants have provided samples of their data, only Saint-Gobain has produced its sales data in full, and no Defendant has produced cost data. Giddings Decl. ¶ 15.

On November 11, 2024, all Defendants except BASF SE, which had not yet been served, moved to dismiss DPPs' Complaint. ECF Nos. 223, 224, 227, 228, 229, 230. BASF SE subsequently joined those motions, in addition to filing its own motion. ECF Nos. 297, 298, 299. On June 25, 2025, the Court granted Defendants' motions and dismissed DPPs' claims without prejudice and with leave to amend within thirty (30) days. ECF No. 300. DPPs subsequently requested and were granted an extension of that deadline to obtain the cooperation under the Settlement with Saint-Gobain for use in their Amended Complaint. ECF Nos. 304, 306.

**B.    Settlement Negotiations.**

DPPs and Saint-Gobain began preliminary settlement discussions in early May 2025. Giddings Decl. ¶ 19. Over the next three months, the parties discussed monetary and other relief in exchange for potential resolution of this Action. *Id*. ¶ 20. These negotiations involved both DPPs and IPPs because Saint-Gobain desired a global resolution of the claims against it. *Id*.

Even after the Court's order dismissing DPPs' claims, the Parties continued their negotiations over a potential resolution. *Id*. ¶ 21. After numerous additional discussions that were professional, but contentious, DPPs and Saint-Gobain reached a written agreement on the material terms of a settlement on July 11, 2025. *Id*. ¶ 22. Accordingly, on July 17, 2025, DPPs and IPPs informed the Court that a settlement agreement in principle had been reached and requested an extension of time to file their Amended Complaints to incorporate the information obtained from the negotiated cooperation. ECF No. 304. The Court granted the request, setting September 26, 2025, as the deadline for DPPs' Amended Complaint. ECF No. 306.

The Parties continued negotiations and finalized the written Settlement and a Confidential Supplement regarding recission provisions in early August 2025. Giddings Decl. ¶ 23. At all times, the settlement negotiations between DPPs and Saint-Gobain were conducted at arm's length by counsel experienced in complex antitrust class actions. *Id*. ¶ 24.

C. **Settlement Terms.**

**Monetary Consideration**. Saint-Gobain has agreed to provide $1.5 million ("Settlement Amount") in financial compensation to the direct purchaser Settlement Class. Ex. A at ¶ 7(a). The Settlement Amount is non-reversionary; no money will be returned to Saint-Gobain if the Settlement is finally approved. *Id.* ¶ 15(a). Saint-Gobain is required to deposit the Settlement Amount into an Escrow Account within ten business days of the Execution Date. *Id.* ¶ 7(a).

**Settlement Class.** The direct purchaser Settlement Class is defined as follows:

> All persons and entities in the United States and its territories who purchased CCAs directly from any of the Defendants or their subsidiaries, predecessors, affiliates, and/or agents during the period beginning no later than January 1, 2017, until Preliminary Approval of this Settlement Agreement.

*Id.* ¶ 3(a).[3]

**Settlement Fund.** DPPs may use up to $200,000 of the Settlement Amount to effectuate notice to putative Settlement Class Members in accordance with a Notice Plan approved by the Court. *Id.* ¶ 2(d). If notice costs exceed $200,000, the Parties will meet and confer regarding payment of the additional costs from the Settlement Amount. *Id.* Attorneys' fees, expenses, and Service Awards, if approved by the Court, will also be paid from the Settlement Amount. *Id.* ¶ 13(a). The Net Settlement Amount[4] will be distributed to Settlement Class Members after final approval in accordance with a distribution plan approved by the Court. *Id.* ¶¶ 7(c), 12(b).

---

[3]     The Settlement Class excludes Defendants, their parent companies, subsidiaries, affiliates, officers, directors, employees, assigns, successors, agents, and co-conspirators, and the Court and its staff. Ex. A at ¶ 3(b).

[4]     "Net Settlement Amount" means the net amount remaining in the Settlement Fund after payment of costs associated with effectuating the Court-approved Notice Plan, taxes, fee and expense award(s), and Service Awards.

**Non-Monetary Consideration.** The Settlement also obligates Saint-Gobain to provide valuable Non-Monetary Consideration to DPPs to assist in their prosecution of the Action against the non-settling Defendants.[5] *Id.* ¶¶ 14(a)(i)-(x). This Non-Monetary Consideration includes (1) documents and data, (2) attorney proffers, and (3) interviews and testimonial evidence.[6] *Id.*

*Documents and Data.* The Settlement requires Saint-Gobain to produce to DPPs all documents relevant to the subject matter of DPPs' claims within five (5) days of preliminary approval. *Id.* ¶ 14(a)(ii). If Saint-Gobain subsequently identifies additional relevant documents, it will notify DPPs, and the Parties will meet and confer regarding production of those documents. *Id.* Saint-Gobain will also complete its production of transactional data within 30 days of Preliminary Approval. *Id.* ¶ 14(a)(iii). Saint-Gobain's counsel shall use their best efforts to respond promptly to Hausfeld's questions about Saint-Gobain's transactional data and shall assist DPPs in authenticating documents and data produced by Saint-Gobain in the Action. *Id.* ¶¶ 14(a)(iii), (ix).

*Attorney Proffers.* The Settlement also requires Saint-Gobain to provide a total of fourteen (14) hours in attorney proffers of the principal facts relevant to the alleged conduct at issue in the Action. *Id.* ¶¶ 14(a)(iv)-(v). The Opening Proffer occurred on August 12, 2025. Giddings Decl. ¶ 28; *see* Ex. A ¶ 14(a)(iv). Within thirty (30) days of Preliminary Approval, Saint-Gobain will participate in a second proffer to provide any further facts and evidence and to respond to Hausfeld's reasonable follow-up questions flowing from the Opening Proffer. Ex. A ¶ 14(a)(v).

---

[5]    In accordance with the Settlement, Non-Monetary Consideration will be provided by Saint-Gobain subject to the limitations set forth in ¶ 14(b)-(d), including ensuring compliance with all laws. Therefore, to the extent subpoena(s) or proceeding through the Hague Convention are required in order for Saint-Gobain to meet its Non-Monetary Consideration obligations, Saint-Gobain shall use its best reasonable efforts to assist Plaintiffs in complying with any required process.

[6]    Each of the three categories of Non-Monetary Consideration is discussed briefly herein. Additional requirements related to Saint-Gobain's provision of Non-Monetary Consideration are set forth in the Settlement. *See* Ex. A ¶¶ 14(a)(i)-(ix).

*Interviews and Testimonial Evidence.* The Settlement obligates Saint-Gobain to use its best reasonable efforts to make up to three (3) Saint-Gobain employees with knowledge of the industry and the events at issue in the Action available for interviews with Hausfeld, *id.* ¶ 14(a)(vi); to make up to two (2) Saint-Gobain employees available for Rule 30(b)(1) depositions in the United States, *id.* ¶ 14(a)(vii); to make witness(es) available for one 30(b)(6) deposition in the United States, *id.*; and to provide up to four (4) trial witnesses, *id.* ¶ 14(a)(viii).

**Releases.** In exchange for Saint-Gobain's provision of Monetary and Non-Monetary consideration, Saint-Gobain and the other Releasees (as defined in the Settlement) shall be released from any and all claims arising or resulting from or relating in any way to any conduct alleged in or otherwise the subject of the Action or that could have been alleged or otherwise been the subject of the Action, subject to the limited exclusions detailed in the Settlement. *Id.* ¶¶ 4(a)-(e).

**Notice**. The Settlement provides that Hausfeld may wait to notice the Settlement Class until a later point and requires it to make reasonable efforts to notice multiple settlements with multiple Defendants, if reached, in a single notice. *Id.* ¶¶ 2(c), 9(e). The costs of notice and claims administration shall be paid from the Settlement Amount. *Id.* ¶ 9(b).

**Confidential Supplement.** Saint-Gobain has the right to rescind the Settlement if a defined threshold for the number of putative class members that exclude themselves from the Settlement Class or the value of those class members' qualifying CCA purchases is reached. *See id.* ¶ 15(c). The Opt-Out Thresholds are contained in a Confidential Supplement, which the Parties will submit to the Court *in camera* upon request. Giddings Decl. ¶ 29; *see* Ex. A ¶ 1(g).

## III.    ARGUMENT

### A.    <u>The Court Should Preliminarily Approve the Settlement.</u>

Settlement approval under Rule 23(e) involves two stages: preliminary approval and final approval. At the preliminary stage, the Court must assess whether the Settlement is "fair,

reasonable, and adequate" based on whether (A) "the class representatives and class counsel have adequately represented the class"; (B) "the proposal was negotiated at arm's length"; (C) "the relief provided for the class is adequate"; and (D) "the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2). The first two factors focus on procedural fairness, while the latter two address the substantive fairness of the proposal. *Moses v. New York Times Co.*, 79 F.4th 235, 242–43 (2d Cir. 2023). Courts in this Circuit also apply the nine factors set out in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974).[7] Rule 23(e)(2) does not displace the *Grinnell* factors, *Moses*, 79 F.4th at 243, and courts thus consider both the latter two Rule 23(e)(2) factors and all relevant *Grinnell* factors in analyzing the substantive fairness of a proposed settlement. *See In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 692-99 (S.D.N.Y. 2019).

Courts are required to conduct a rigorous review of proposed settlements, but they also recognize the "overriding public interest in settling and quieting litigation," particularly in complex class actions, where settlement promotes judicial efficiency and reduces litigation costs. *Fleisher v. Phoenix Life Ins. Co.*, No. 11-cv-8405, 2015 WL 10847814, at *4 (S.D.N.Y. Sept. 9, 2015); *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116–17 (2d Cir. 2005), *superseded on other grounds,* 79 F.4th 235 (2d Cir. 2023). Absent fraud or collusion, courts generally defer to the judgment of the parties who negotiated the settlement. *See Christine Asia Co. v. Yun Ma*, No. 15-md-0263, 2019 WL 5257534, at *8 (S.D.N.Y. Oct. 16, 2019).

---

[7]    The nine *Grinnell* factors are "(1) the complexity, expense and likely duration of the litigation, (2) the reaction of the class to the settlement, (3) the stage of the proceedings and the amount of discovery completed, (4) the risks of establishing liability, (5) the risks of establishing damages, (6) the risks of maintaining the class action through the trial, (7) the ability of the defendants to withstand a greater judgment, (8) the range of reasonableness of the settlement fund in light of the best possible recovery, and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation." 495 F.2d at 463.

1.    *The Settlement is Procedurally Fair.*

i)    **DPPs and Hausfeld have adequately represented the Class.**

In evaluating adequacy of representation under Rule 23(e)(2)(A), courts consider whether plaintiffs' interests are "antagonistic to the interest of other members of the class" and whether their attorneys are "qualified, experienced, and able to conduct the litigation." *GSE Bonds*, 414 F. Supp. 3d at 692 (cleaned up). Here, both considerations support the finding that the named DPPs and Hausfeld have adequately and fairly represented the direct purchaser Settlement Class.

*First*, the named DPP' interests are fully aligned with those of the Settlement Class. The named DPPs allege that they, like all members of the Settlement Class, were direct purchasers of CCAs that paid inflated prices due to Defendants' alleged price-fixing conspiracy. The named DPPs, like all members of the Settlement Class, seek to recover overcharges caused by that alleged misconduct. Because they suffered the same injuries and seek the same relief, the named DPPs and the Settlement Class have a shared "interest in vigorously pursuing the claims of the class." *GSE Bonds*, 414 F. Supp. 3d at 692 (cleaned up). Thus, the named DPPs' interests are not antagonistic to those of the other members of the Settlement Class. *See id.*

*Second*, Hausfeld's experience and knowledge in complex class actions also support a finding of adequate representation under Rule 23(e)(2)(A). *See Caccavale v. Hewlett-Packard Co.*, No. 20-cv-974, 2025 WL 882220, at *5 (E.D.N.Y. Mar. 14, 2025). Hausfeld has served leadership roles in more than 80 antitrust and complex class actions, managing major MDLs involving global cartels and foreign defendants and recovering billions of dollars for plaintiffs and class members. Giddings Decl. ¶ 34. Jeannine Kenney and Nathaniel Giddings, who lead the Hausfeld team in this case, have significant experience managing all aspects of Section 1 litigation. *Id*.

Hausfeld has vigorously represented DPPs and the Settlement Class throughout this litigation. *Id.* ¶ 36. Since filing the first class action complaint against Saint-Gobain and the other

8

Defendants in November 2023, Hausfeld conducted (and continues to conduct) extensive investigation into Defendants' alleged misconduct; advocated for the consolidation of numerous related cases into this MDL for pre-trial purposes; filed DPPs' Consolidated Complaint and succeeded in serving it on multiple foreign Defendants under the Hague Convention; engaged in extensive discovery negotiations with Defendants; filed briefs in opposition to Defendants' motions to dismiss; and led negotiations to secure this Settlement for the benefit of the Settlement Class. Giddings Decl. ¶ 36. The Settlement meets the requirements of Rule 23(e)(2)(A).

### ii)    The Settlement was negotiated at arm's-length.

Rule 23(e)(2)(B) requires the Court to consider whether the Settlement was the result of arm's-length negotiations as part of its procedural fairness analysis. *See* Fed. R. Civ. P. 23(e)(2)(B). Here, negotiations did not begin until a year and a half after the litigation was filed; the negotiations spanned more than three months across many meetings and communications; and discussions stalled at times as the Parties reached impasse on certain provisions. *See* Giddings Decl. ¶¶ 19-24. Moreover, DPPs and Hausfeld were able to finalize a resolution that provides significant value to the Settlement Class, including valuable Non-Monetary Consideration, which DPPs intend to use to support the allegations in their forthcoming Amended Complaint, *after* the Action had been dismissed. *See* ECF No. 300. The Settlement thus satisfies Rule 23(e)(2)(B).

### 2.    *The Settlement is Substantively Fair.*

### i)    The Settlement provides meaningful relief for the Settlement Class.

Rule 23(e)(2)(C) lists four sub-factors that the Court must consider in assessing whether the Settlement provides adequate relief for the Settlement Class: (i) "the costs, risks, and delay of trial and appeal"; (ii) "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims"; (iii) "the terms of any proposed award of attorney's fees, including timing of payment"; and (iv) "any agreement required to be identified

under Rule 23(e)(3)." These sub-factors, along with the eight *Grinnell* factors relevant here,[8] all support preliminary approval.

**The Cost, Risks, and Delay of Trial and Appeal.** The first Rule 23(e)(2)(C) factor requires the Court to assess "the costs, risks, and delay of trial and appeal" in evaluating whether the Settlement provides adequate relief. Fed. R. Civ. P. 23(e)(2)(C)(i). This analysis "overlaps significantly" with four *Grinnell* factors, including the complexity, expense, and likely duration of the litigation (first factor), as well as the risks of establishing liability, damages, and class certification (fourth through sixth factors). *GSE Bonds*, 414 F. Supp. 3d at 693-94. In assessing these factors, the Court need not decide the merits of the case, resolve unsettled legal questions, or forecast the outcome of the case with certainty. *Fleisher*, 2015 WL 10847814, at *8. Rather, it must weigh the risks of litigation against the benefits of the Settlement. *See id.*

Courts recognize that federal antitrust cases present exceptional risks because they are "complicated, lengthy, and bitterly fought, as well as costly," *In re Vitamin C Antitrust Litig.*, No. 06-md-1738, 2012 WL 5289514, at *4 (E.D.N.Y. Oct. 23, 2012) (cleaned up). Those risks are especially acute here. Not only does this case involve complex economic theories, technical market data, and multiple Defendants with sophisticated counsel, but DPPs' claims have been dismissed. *See* ECF No. 300. DPPs are preparing an Amended Complaint, but they face the risk that their revised allegations may again be dismissed or that their claims may be narrowed in ways that limit the scope of class recovery. The Settlement helps mitigate those risks by requiring Saint-Gobain to provide not only monetary relief but also valuable Non-Monetary Consideration. *See* Ex. A ¶¶ 14(a)(i)-(x). DPPs expect that the Non-Monetary Consideration provided by Saint-Gobain will

---

[8] The Court need not consider the second *Grinnell* factor—the "reaction of the settlement class"—because "consideration of this factor is generally premature at the preliminary approval stage." *GSE Bonds*, 414 F. Supp. 3d at 699 n.1 (citation omitted).

materially strengthen DPPs' forthcoming Amended Complaint and increase the likelihood of success and greater recovery for the Settlement Class from the remaining Defendants. Giddings Decl. ¶ 27. These considerations support a finding that the benefits of the Settlement outweigh the risks of continuing to litigate (and here, the risk of dismissal) and thus Rule 23(e)(2)(C)(i) and the four overlapping *Grinnell* factors strongly weigh in favor of preliminary approval.

**Effectiveness of the Proposed Method of Distributing Relief.** The second sub-factor requires the Court to consider "the effectiveness of any proposed method of distributing relief to the class" in evaluating whether the Settlement provides adequate relief to the Settlement Class. Fed. R. Civ. P. 23(e)(2)(C)(ii). While a distribution plan "must be fair and adequate" to satisfy the Rule, "it need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel." *GSE Bonds*, 414 F. Supp. 3d at 694 (cleaned up).

DPPs and Hausfeld will submit a proposal for claims submission, processing, and distribution when they move for approval of a Notice Plan. Giddings Decl. ¶ 30. DPPs anticipate having transactional sales data from all Defendants by that time.[9] *Id.* ¶ 31. Because the Settlement Administrator will be able to use that data to cross-check claims, DPPs expect modest purchase documentation requirements for putative class members. *Id.* Settlement Class Members that disagree with the proposed claims processing plan will have a chance to object prior to the final approval hearing. Because the plan for claims submission, processing, and distribution will be proposed by experienced counsel, subject to Settlement Class Member objections, and reviewed by the Court prior to final approval, Rule 23(e)(2)(C)(ii) is satisfied at this stage.

**The Terms of Any Proposed Award of Attorneys' Fees**. The third sub-factor requires

---

[9]    As of the date of this filing, DPPs have not received complete sales data from Defendants and thus are not able to presently assess the sufficiency of that data for claims validation purposes.

the Court to consider "the terms of any proposed award of attorney's fees, including timing of payment," in assessing if the Settlement provides adequate relief. Fed. R. Civ. P. 23(e)(2)(C)(iii).

With respect to attorneys' fees and costs, the Settlement provides only that any attorneys' fees or costs awarded will be paid from the Settlement Fund upon Court approval. Ex. A ¶ 13(a). "Because class counsel left the issue of attorney's fees to the discretion of the District Court, there [is] no indication that the Settlement was the product of bad faith or collusion." *In re MetLife Demutualization Litig.*, 689 F. Supp. 2d 297, 331 (E.D.N.Y. 2010) (cleaned up). Moreover, there is no "clear-sailing" provision in the Settlement; Saint-Gobain retains the right to object to any request for attorneys' fees. *Vasquez v. A+ Staffing LLC*, 746 F. Supp. 3d 26, 57–58 (E.D.N.Y. 2024) ("Courts in this circuit have expressed concerns with the inclusion of clear-sailing clauses in class action settlement agreements, particularly when agreements also contain reversionary clauses.") These provisions demonstrate the arm's-length negotiations of the Parties.

The Settlement also provides for transparency and accountability in connection with Class Counsels' fee request. DPPs will file a motion for attorneys' fees and costs sufficiently in advance of the objection deadline so that Settlement Class Members have a chance to review and object to that request. This structure allows the Court to evaluate the reasonableness of the request and provides a meaningful check against an excessive or disproportionate attorneys' fee award. Because the Settlement appropriately safeguards the interests of the Settlement Class in that regard, Rule 23(e)(2)(C)(iii) weighs in favor of preliminary approval.

**Any Agreement Required to Be Identified Under Rule 23(e)(3).** The final Rule 23(e)(2)(C) sub-factor directs the Court to consider "any agreement required to be identified by Rule 23(e)(3)" when evaluating whether the proposed Settlement provides adequate relief. Fed. R.

Civ. P. 23(e)(2)(C)(iv). Rule 23(e)(3), in turn, requires the identification of "any agreement made in connection with the proposal." Fed. R. Civ. P. 23(e)(3).

Here, the only agreement required to be disclosed under Rule 23(e)(3) is the Confidential Supplement, which is incorporated into the Settlement and contains only the Parties' agreed-upon Opt-Out Threshold, which, if met, gives Saint-Gobain the right to rescind the Settlement. *See* Ex. A at ¶ 15(c). The Parties will submit the Confidential Supplement to the Court for *in camera* review upon request. Giddings Decl. ¶ 29; *see* Ex. A at ¶ 1(g).

The Parties' agreement regarding the Opt-Out Threshold (sometimes known as a "blow" provision) gives Saint-Gobain reasonable assurance that the Settlement will resolve a substantial portion of potential claims. *Medina v. NYC Harlem Foods Inc.*, No. 21-cv-1321, 2022 WL 1184260, at *6 (S.D.N.Y. Apr. 21, 2022) ("[I]f too many class members opt out of the class settlement and bring their own claims, the defendant must pay both the class's relief and then the sum of all of these individual judgments.") (cleaned up). These provisions "encourage settlement by allowing defendants to limit their potential liability" from numerous opt-outs. *Id.* ("[C]ourts usually approve settlement agreements with blow-up provisions.").

By providing limited protection against the risk of widespread opt-outs and follow-on litigation, the Confidential Supplement enables Saint-Gobain to commit to meaningful relief for the Settlement Class described herein while preserving its interest in finality. Because the only agreement made in connection with the Settlement is narrowly tailored and subject to judicial oversight, Rule 23(e)(2)(C)(iv) weighs in favor of preliminary approval.

**Stage of Proceedings.** Courts in this Circuit also consider the third *Grinnell* factor—the stage of the proceedings and the amount of discovery completed—in assessing whether a settlement provides adequate relief. *See, e.g.*, *Fleisher*, 2015 WL 10847814, at *7. The key inquiry

is whether DPPs and Hausfeld "have obtained a sufficient understanding of the case to gauge the strengths and weaknesses of their claims and the adequacy of the settlement." *In re AOL Time Warner, Inc.*, No. 02-cv-5575 (MDL No. 1500), 2006 WL 903236, at *10 (S.D.N.Y. Apr. 6, 2006). The Parties do not need to have completed, or even begun, formal discovery. *See In re IMAX Sec. Litig.,* 283 F.R.D. 178, 190 (S.D.N.Y. 2012)*.* Rather, it is enough if DPPs and Hausfeld have "engaged in sufficient investigation of the facts to enable the Court to intelligently make an appraisal of the Settlement." *AOL*, 2006 WL 903236, at *10 (cleaned up). That standard is met.

Although this Settlement comes early in the litigation, it was reached on the heels of the Court's order granting Defendants' motions to dismiss DPPs' Complaint without prejudice. *See* ECF No. 300. Thus, DPPs have a clear picture of the strength of their case as pleaded in their Complaint. The Non-Monetary Consideration set forth in the Settlement will strengthen DPPs' ability to replead their claims with specificity and pursue recovery against the remaining Defendants and, thus, it comes at an apt time. Because the Settlement provides practical value given the stage of the proceedings, the third *Grinnell* factor supports preliminary approval.

**Saint-Gobain's Ability to Withstand a Greater Judgment.** Courts in this Circuit also weigh the seventh *Grinnell* factor, "the ability of the [settling defendant] to withstand a greater judgment," in considering whether a settlement provides adequate relief to members of the settlement class. *See, e.g., GSE Bonds*, 414 F. Supp. 3d at 696 (*quoting Grinnell*, 495 F.2d at 463).

Although Saint-Gobain is a large multinational conglomerate with significant financial resources and, likely, the ability to withstand a judgment greater than the Settlement Amount, this factor, standing alone, does not preclude a finding of substantive fairness where the other factors weigh heavily in favor of approving the Settlement. *D'Amato v. Deutsche Bank*, 236 F.3d 78, 86 (2d Cir. 2001); *Davis v. J.P. Morgan Chase & Co.*, 827 F. Supp. 2d 172, 178 (W.D.N.Y. 2011);

*IMAX*, 283 F.R.D. at 191 (giving the seventh *Grinnell* factor little weight because "[w]ere a defendant's ability to withstand a greater judgment a critical factor, then only the most massive settlement awards could be deemed reasonable in cases against large corporations").

The Settlement's Non-Monetary Consideration provisions, *see* Ex. A at ¶¶ 14(a)(i)-(x), which require Saint-Gobain to provide documents, data, and testimony that DPPs intend to use to prosecute their claims against the other Defendants, make the Settlement considerably more valuable than the monetary consideration alone. Given the substantial non-monetary benefits of the Settlement and the other *Grinnell* factors that weigh in favor of approval, Saint-Gobain's ability to withstand a larger monetary judgment does not weigh against preliminary approval.

**The Range of Reasonableness of the Proposed Settlement.** Courts in this Circuit also consider the final two *Grinnell* factors—"the range of reasonableness of the settlement in light of the best possible recovery" (eighth factor) and "the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation" (ninth factor)—in assessing the adequacy of a proposed settlement. *See, e.g., GSE Bonds*, 414 F. Supp. 3d at 696 (cleaned up). In applying these factors, courts do not require a settlement to reflect the best-case recovery; instead, they assess its value "in light of the strength and weaknesses of plaintiffs' case." *IMAX*, 283 F.R.D. at 191 (cleaned up). A settlement can be approved even when the financial benefits "amount to a small percentage of the recovery sought." *Id.* at 192.

DPPs recognize that the proposed Settlement Amount represents a small fraction of the total potential recovery at stake in this case. But given the Court's dismissal of DPPs' Complaint in full (without prejudice), the stay on discovery, and limited publicly available information about the alleged conspiracy, DPPs face the possibility of recovering nothing—against Saint-Gobain or any other Defendant—if they fail to offer sufficient additional factual support for their claims. This

15

Settlement is valuable not just for the monetary relief it provides, but for the substantial cooperation that comes with it. Thus, whether weighed against the best possible recovery or the possibility of no recovery at all—and in light of the significant motion practice that lies ahead—the Settlement falls well within the range of reasonableness and provides adequate relief for the Settlement Class. *See, e.g., In re Air Cargo Shipping Servs. Antitrust Litig.*, No. 06-md-1775, 2011 WL 2909162, at *4 (E.D.N.Y. July 15, 2011) (finding that agreement to cooperate "adds significant value" to the overall value of proposed settlements). Further, as the first settlement in the Action, it has value as an "icebreaker" to potentially facilitate future settlements. *See Sonterra Cap. Master Fund, Ltd. v. Barclays Bank PLC*, No. 15-cv-3538, 2023 WL 3749996, at *5 (S.D.N.Y. June 1, 2023). For these reasons, the eighth and ninth *Grinnell* factors weigh in favor of preliminary approval.

### ii)    The Settlement treats Settlement Class members equitably.

Rule 23(e)(2)(D) requires the Court to assess the Settlement's substantive fairness based on whether it "treats class members equitably relative to each other." DPPs intend to propose a distribution plan that allocates the Net Settlement Amount to Settlement Class Members *pro rata* (*i.e.*, based on the value of their purchases of the price-fixed products relative to the total value of all such purchases), as is typical in Section 1 price-fixing cases, at the time they move for approval of notice to the Settlement Class. Giddings Decl. ¶ 32. Because each Settlement Class Member's payment will be based on the value of their purchases of the price-fixed products relative to the total value of all purchases claimed by Settlement Class Members, the Settlement will compensate each class member in proportion to their injury. *Id.* "Courts generally consider plans of allocation that reimburse class members based on the type and extent of their injuries to be reasonable." *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 328 (3d Cir. 2011) (cleaned up); *GSE Bonds*, 414 F. Supp. 3d at 698–99 (approving settlement and distribution plan under which each class member would

receive "a *pro rata* share of the recovery based on the estimated price impact of defendants' conduct"). Because DPPs and Hausfeld will provide sufficient information to allow the Court to confirm that the Settlement treats Settlement Class Members equitably prior to granting final approval, Rule 23(e)(2)(D) is satisfied for purposes of preliminary approval.

### B.    The Court Should Certify the Direct Purchaser Settlement Class.

Although "[t]he ultimate decision to certify the class for purposes of settlement cannot be made until the hearing on final approval," the Court must find that it will likely be able to certify the class for purposes of settlement prior to granting preliminary approval of the Settlement. Fed. R. Civ. P. 23(e)(1)(B)(ii); Fed. R. Civ. P. 23(e) 2018 advisory committee's note.

For the Court to find that it will likely be able to certify the proposed Settlement Class, it must conclude that the Settlement Class satisfies both Rule 23(a) and Rule 23(b)(3). Rule 23(a) states "four threshold requirements applicable to all class actions": (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613 (1997). Rule 23(b)(3) sets forth two additional requirements: (1) predominance; and (2) superiority. *See Larsen v. JBC Legal Grp., P.C.*, 235 F.R.D. 191, 196 (E.D.N.Y. 2006). As explained below, the proposed Settlement Class meets each of these requirements.

### 1.    *The Settlement Class Satisfies Rule 23(a).*

**Numerosity**. The numerosity requirement of Rule 23(a) is satisfied where "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Impracticality does not mean that joinder must be impossible, but rather "refers to the difficulty or inconvenience of joinder." *In re Indep. Energy Holdings PLC Sec. Litig.*, 210 F.R.D. 476, 479 (S.D.N.Y. 2002). In this Circuit, a class of 40 or more members presumptively satisfies numerosity. *See Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995). In assessing numerosity, the Court "may make some commonsense assumptions and rely on reasonable inferences drawn from the

available facts." *Bourlas v. Davis Law Assocs.*, 237 F.R.D. 345, 351 (E.D.N.Y. 2006).

The Settlement Class easily satisfies the numerosity requirement. As DPPs alleged in their Complaint, "Defendants' substantial nationwide presence and the large number of CCA purchasers in the United States" makes the Class so numerous that joinder is impracticable. ECF No. 157 at ¶ 265. Although DPPs do not have enough information to provide an estimate of the total number of Settlement Class Members at this stage they reasonably believe there are substantially well over 40. And the Settlement requires Saint-Gobain to supply Plaintiffs with information about qualifying customers who directly purchased CCAs within thirty (30) days of Preliminary Approval. Ex. A at ¶ 14(a)(i). As such, DPPs expect to be able to provide an estimate of the number of Settlement Class Members prior to final approval.

**Commonality**. The commonality requirement of Rule 23(a) is satisfied where "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). A common question is a "common contention. . . that is capable of classwide resolution." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). What matters is "the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Id.* (citation omitted). The existence of a single common question will satisfy Rule 23(a)(2). *Id.* at 359. Commonality is therefore generally considered a "low hurdle easily surmounted." *Erickson v. Jernigan Cap., Inc.*, 692 F. Supp. 3d 114, 126 (S.D.N.Y. 2023).

Courts have held that allegations concerning the existence, scope, and efficacy of an alleged antitrust conspiracy, like the one alleged here, "present important common questions sufficient to satisfy the commonality requirement." *In re Flat Glass Antitrust Litig.*, 191 F.R.D. 472, 478 (W.D. Pa. 1999) (internal quotation marks omitted) (collecting cases).

The proposed Settlement Class satisfies the commonality requirement. DPPs' Complaint

alleged the existence of several common questions, any one of which would suffice: whether Defendants and their co-conspirators engaged in an unlawful antitrust conspiracy; the identity of the participants in the alleged conspiracy; its duration and the conduct done in furtherance of it; whether that conduct caused injury to Plaintiffs and the proposed Settlement Class; the effect of the conspiracy on CCA prices; whether Defendants and their co-conspirators fraudulently concealed their unlawful conduct; and the appropriate damages and injunctive relief. ECF No. 157 ¶ 266. Because each of these questions is a common contention capable of classwide resolution, the commonality requirement is satisfied here.

**Typicality**. The typicality requirement is satisfied where "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Typicality exists when "each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009). "Since the claims only need to share the same essential characteristics, and need not be identical, the typicality requirement is not highly demanding." *Bolanos v. Norwegian Cruise Lines Ltd.*, 212 F.R.D. 144, 155 (S.D.N.Y. 2002).[10]

The proposed Settlement Class satisfies typicality because the named DPPs and all Settlement Class Members sustained the same alleged injury (the payment of overcharges on CCAs) resulting from the same alleged unlawful conduct (Defendants' conspiracy to fix prices of CCAs). Minor variations in the fact patterns underlying Settlement Class Members' individual claims do not preclude a finding of typicality. *Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993). Nor do differences in the amount of damages sustained by Settlement Class Members

---

[10] If commonality is established, typicality is generally established as well. *See Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 158 n.13 (1982) (noting that the "commonality and typicality requirements of Rule 23(a) tend to merge").

undermine typicality or defeat certification. *See In re Playmobil Antitrust Litig.*, 35 F. Supp. 2d 231, 242 (E.D.N.Y. 1998).

**Adequacy of representation.** Adequacy is satisfied where "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Courts in this Circuit find adequacy where the named plaintiffs (1) do not have interests that are antagonistic to those of the class and (2) have selected counsel who is qualified, experienced, and generally able to conduct the litigation. *See Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000). Denying certification on adequacy grounds requires a conflict "so palpable as to outweigh the substantial interest of every class member in proceeding with the litigation." *In re NASDAQ Mkt.–Makers Antitrust Litig.*, 169 F.R.D. 493, 514–15 (S.D.N.Y. 1996).

The proposed Settlement Class satisfies the adequacy requirement. *First*, because the named DPPs and Settlement Class Members seek damages for the same alleged injury arising from the same alleged conduct, their interests are fully aligned, and the named DPPs will represent absent Settlement Class Members fairly and adequately. *See In re Currency Conversion Fee Antitrust Litig.*, 264 F.R.D. 100, 112–13 (S.D.N.Y. 2010) ("[T]he great weight of authority in price-fixing conspiracy cases . . . holds that the victim of one alleged co-conspirator is adequate to prove liability for victims of all co-conspirators.") (collecting cases). *Second*, as detailed in Section III.A.1, *supra*, as well as in prior briefing, Hausfeld is qualified, experienced, and able to conduct the litigation on behalf of the Settlement Class. *See* ECF Nos. 118, 119, 126; *see also* Giddings Decl. ¶¶ 34-36. By selecting such qualified counsel, the named DPPs have further demonstrated that they will represent the interests of the Settlement Class fairly and adequately.

### 2. *The Settlement Class Satisfies Rule 23(b)(3).*

**Predominance.** Rule 23(b)(3)'s predominance requirement is satisfied where "questions of law or fact common to class members predominate over any questions affecting only individual

members." *See Amgen, Inc. v. Conn. Ret. Plans and Tr. Funds*, 568 U.S. 455, 459 (2013). To meet this requirement, DPPs must show that issues subject to generalized proof outweigh issues subject to individualized proof. *In re Salomon Analyst Metromedia Litig.*, 544 F.3d 474, 480 (2d Cir. 2008) ("*SAM*"), *abrogated on other grounds by Amgen*, 568 U.S. 455 (2013); *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 139 (2d Cir. 2001). Predominance is often readily established in antitrust cases because the violations are susceptible to common proof. *Amchem*, 521 U.S at 625; *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 56 (E.D.N.Y. 2019); *In re Air Cargo Shipping Servs. Antitrust Litig.*, No. 06-md-1175, 2014 WL 7882100, at *37 (E.D.N.Y Oct. 15, 2014). In addition, the predominance requirement is generally "easier to satisfy" in settlement than in litigation because manageability concerns are absent in the settlement context. *Payment Card*, 330 F.R.D. at 56; *Air Cargo*, 2014 WL 7882100, at *37.

The proposed Settlement Class satisfies the predominance requirement because common questions lie at the heart of each Settlement Class Member's claims. The common question of whether Defendants conspired to fix prices of CCAs, for example, will be proven (or disproven) on a class-wide basis from Defendants' documents, data, and testimony. *See NASDAQ*, 169 F.R.D. at 518 ("Since a single conspiracy is alleged, the relevant proof of this will not vary among class members, and clearly presents a common question fundamental to all class members."). Defendants' documents, data, and testimony will also be used to prove (or disprove) on a class-wide basis the common question of whether Defendants' conspiracy caused Settlement Class Members to pay supracompetitive prices of CCAs. And any individualized damages issues do not defeat predominance. *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 409 (2d Cir. 2015).

Because issues subject to generalized proof outweigh any issues subject to individualized proof, the predominance requirement is satisfied here. *See SAM*, 544 F.3d at 480.

**Superiority**. The superiority requirement of Rule 23(b)(3) is satisfied where "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." The Rule enumerates four factors for courts to consider in making this assessment: (A) "the class members' interest in individually controlling the prosecution or defense of separate actions"; (B) "the extent and nature of any litigation concerning the controversy already begun by or against class members"; (C) "the desirability or undesirability of concentrating the litigation of the claims in the particular forum"; and (D) "the likely difficulties in managing a class action."

The proposed Settlement Class satisfies the superiority requirement because a class action is the only reasonable method for fairly and efficiently adjudicating Settlement Class Members' claims. Antitrust actions often involve widespread harm but relatively modest individual recoveries compared to the substantial cost of litigation. *In re Vitamin C Antitrust Litig.*, 279 F.R.D. 90, 109 (E.D.N.Y. 2012) (noting antitrust suits "require significant fees toward expert analysis and testimony," and thus are often "prohibitively expensive for class members with small claims to proceed individually"). CCAs are among many products purchased by Settlement Class Members—most of which are small businesses—and likely account for just a portion of their input costs, making individual actions economically impractical for all but the largest purchasers. Additionally, this Action avoids duplicative litigation, prevents inconsistent outcomes, conserves judicial resources, and enables recovery for individuals with smaller claims who would otherwise lack access to justice. *See, e.g., Currency Conversion Fee*, 264 F.R.D. at 117 ("Streamlining the litigation in one forum will simplify the process and avoid inconsistency."). The superiority requirement is therefore satisfied, and the Court should preliminarily certify the Settlement Class.

**C.**    **The Court Should Appoint Hausfeld as Settlement Class Counsel and Named DPPs as Settlement Class Representatives.**

In appointing Settlement Class Counsel, the Court must consider (1) counsel's work to identify or investigate the potential claims; (2) counsel's experience in handling class actions, other complex litigation, and similar claims; (3) counsel's knowledge of the applicable law; and (4) the resources that counsel will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(A).

Hausfeld readily meets these requirements. As set forth in Section III.A.1, *supra*, and prior briefing, Hausfeld has undertaken extensive efforts to bring this Action, has decades of experience in handling complex class actions, and is recognized as a leader in the antitrust bar. *See* ECF Nos. 118, 119, 126; *see also* Giddings Decl. ¶¶ 34-36. Hausfeld will continue to commit the resources necessary to prosecute this Action on behalf of the Settlement Class. Giddings Decl. ¶ 37.

The named DPPs should also be appointed as settlement class representatives because, as discussed above, the named DPPs are adequate for purposes of certification and are without conflicts with other class members. Further, each named DPP has actively participated in this litigation, providing information necessary for the investigation and Complaint. *Id*. ¶ 38.

**D.**    **The Court Should Appoint Huntington as the Escrow Agent and JND as the Settlement Administrator.**

DPPs also respectfully request that the Court appoint Huntington as the Escrow Agent and JND as the Settlement Administrator. Huntington and JND have extensive experience in successfully managing class action funds and class action settlements. *See* Giddings Decl., Exs. B (Huntington materials); C (JND materials).

**E.**    **The Court Should Defer Notice.**

DPPs respectfully request that the Court permit them to defer notice of the Settlement to the Settlement Class, consistent with the terms of the Settlement. *See* Ex. A at ¶¶ 2(c), 9(e). "[P]ostponing formal notice under Rule 23(c)(2) may be appropriate if there is a reason for the

delay and it would not prejudice those class members who are not before the court." *McKinney v. U.S. Postal Serv.*, 292 F.R.D. 62, 68 (D.D.C. 2013) (cleaned up).

Deferring notice will allow the costs of notice to be shared across multiple settlements, thereby leaving more money for distribution to the Settlement Class. In addition, combined notice will reduce the risk of confusion that may arise from multiple, successive communications to Settlement Class Members. Providing notice to a Settlement Class of this size is a significant expense, typically in the six-figure range, and noticing multiple settlements in a single notice will result in meaningful efficiencies and cost savings for the Settlement Class. Giddings Decl. ¶ 33.

In large antitrust cases, courts have discretion to (and often do) defer notice until additional settlements are reached. *See, e.g., Albert v. Glob. Tel*link Corp.*, No. 20-cv-1936, 2024 WL 4391866, at *13 (D. Md. Oct. 2, 2024) (ordering class counsel to seek approval of a notice plan after defendants provide class member contact information and/or plaintiffs reach additional settlements, and before seeking final approval); *In re New Jersey Tax Sales Certification Antitrust Litig.*, No. 12-cv-1893, Preliminary Approval Order (ECF No. 276) ¶ 7 (D.N.J. Aug. 13, 2013) (granting preliminary approval of settlement and deferring class notice for cost saving purposes).

DPPs therefore respectfully request that the Court defer formal notice and distribution until a later date, such as when (and if) they are able to reach (an) additional settlement(s), at which time DPPs will submit their proposed Notice Plan.[11] *See* Giddings Decl. ¶¶ 30-33.

---

[11] While DPPs request that notice to the Settlement Class be deferred, notice to government officials under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1715, will proceed on the required timeline. The Settlement obligates Saint-Gobain to serve notice of the Settlement on the appropriate federal and state officials within ten (10) days of this filing, as required by CAFA, and to notify the Court once service is complete. Ex. A at ¶ 20.

## IV.    CONCLUSION

Based on the foregoing, DPPs and Hausfeld respectfully request that the Court (1) preliminarily approve the proposed Settlement; (2) certify the proposed direct purchaser Settlement Class for settlement purposes under Rules 23(b)(3) and (e); (3) appoint the named DPPs as Settlement Class Representatives; (4) appoint Hausfeld as Settlement Class Counsel; (5) appoint Huntington as the Escrow Agent; and (6) appoint JND as the Settlement Administrator.

Dated: August 15, 2025                    Respectfully submitted,

                        */s/ Nathaniel C. Giddings*
                        Nathaniel C. Giddings
                        **HAUSFELD LLP**
                        1200 17th Street NW, Suite 600
                        Washington, DC 20036
                        Tel: (202) 540-7200
                        Fax: (202) 540-7201
                        ngiddings@hausfeld.com

                        Jeannine Kenney
                        **HAUSFELD LLP**
                        325 Chestnut Street, Suite 900
                        Philadelphia, PA 19106
                        Tel: (215) 985-3270
                        Fax: (215) 985-3271
                        jkenney@hausfeld.com

                        Scott Martin
                        **HAUSFELD LLP**
                        33 Whitehall Street, 14th Floor
                        New York, NY 10004
                        Tel: (646) 357-1100
                        Fax: (212) 202-4322
                        smartin@hausfeld.com

                        Michael P. Lehmann
                        Emma Blake
                        **HAUSFELD LLP**
                        580 California Street, 12th Floor
                        San Francisco, CA 94111
                        Tel: (415) 633-1908

Fax: (415) 633-4980
mlehmann@hausfeld.com
eblake@hausfeld.com

*Interim Lead Class Counsel for the
Proposed Direct Purchaser Class*